## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KATHY ALIANO<br><br>                    Plaintiff,<br><br>          v.<br><br>JOE CAPUTO & SONS – ALGONQUIN,<br>INC., An Illinois Corporation, individually and<br>d/b/a JOE CAPUTO & SONS FRUIT<br>MARKET; and DOES 1-10,<br><br>                    Defendants. | CIVIL ACTION No. 09-CV-0910<br><br>Hon. Harry D. Leinenweber<br>Magistrate Judge Mason<br><br>***Returnable:  Tuesday, August 24, 2010*** |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOE CAPUTO & SONS – ALGONQUIN, INC.'S MOTION FOR SUMMARY JUDGMENT

---

**DOHERTY & PROGAR LLC**
Michael J. Progar (ARDC No. 6181280)
200 West Adams Street, Suite 2220
Chicago, IL 60606
Telephone: (312) 630-9630
Facsimile: (312) 630-9001
Email: mjp@doherty-progar.com

**FOX ROTHSCHILD LLP**
John J. Haggerty (*pro hac vice*)
Stephanie B. Fineman (*pro hac vice*)
2700 Kelly Road, Suite 300
Warrington, PA  18976-3624
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
Email: jhaggerty@foxrothschild.com
           sfineman@foxrothschild.com

Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: August 9, 2010*

*Attorneys for Defendant,*
*Joe Caputo and Sons – Algonquin, Inc.*

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is not about protecting Plaintiff Kathy Aliano ("Plaintiff") (or anyone else) from identity theft and fraud or recouping damages for actual injury.[1] No, this case, like the nine other FACTA cases Plaintiff and her husband have filed through their current counsel in the last three years, is all about the money. It is a bold, thinly-veiled attempt to reap a $30 million - $300 million profit from a local, family-owned grocer, defendant Joe Caputo & Sons – Algonquin, Inc. ("Caputo"). Plaintiff blithely asserts that she (and approximately 300,000 putative plaintiffs) should be awarded such exorbitant damages because Plaintiff, in a $105.57 transaction, allegedly received a printed receipt showing more than the last four digits of **a** credit card number which may not even be hers![2] Though the evidence does not support it, she claims Caputo "willfully" violated federal law between August 30, 2007 and February 1, 2009.

As will be discussed, the undisputed evidence establishes that at no time did Caputo willfully violate the law. In this regard, it is important that the Court be aware of the three key immutable and unassailable facts, which are set forth more fully in the contemporaneously-filed *Statement Of Undisputed Material Facts Pursuant To Local Rule 56.1(A)(3)* ("MF"):

- Before this lawsuit, Caputo did not know of FACTA or its truncation requirements.

- Before this lawsuit, Caputo did not know that the proprietary software manufactured by LOC Software ("LOC") and selected and installed by the independent, outside professional, Integrated Store Systems, Inc. ("ISSI") caused receipts to be printed in a way that violated the law.

---

[1] Plaintiff's individual and putative class claims for negligent violation/actual injury were dismissed with prejudice and, as Plaintiff has admitted, her sole remaining claim is for alleged willful violation.

[2] Though it has now been two-and-a-half years since she filed this lawsuit, to date, Plaintiff has failed to produce any evidence, as required, establishing she was the "consumer cardholder" on the date of the alleged transaction. Without waiver of its rights, Caputo assumes *arguendo* solely for purposes of this Motion that Plaintiff has standing and that subject matter jurisdiction and venue are proper.

- Even if it had been aware that the proprietary software was flawed (which it was not), Caputo had no control over the software and what it does. No one at Caputo had the ability (or legal right) to modify the proprietary software so as to truncate any more debit and/or credit card numbers off the receipts. The software manufacturer did not provide ISSI or Caputo with the source code. It is undisputed that, to change the programming of the software so that the credit/debit card number on receipts print with five or less numbers, Caputo had to get a specific release (upgrade) of the software from the manufacturer. It is also undisputed that the software manufacturer's upgrade was not ready for installation at Caputo's until November 2008.

The undisputed facts, summarized in this Memorandum and detailed more fully in the accompanying Material Facts and exhibits, establish that no fact finder could draw a reasonable inference that Caputo "willfully" – this is, "knowingly" or "recklessly" – violated FACTA from August 30, 2007 until February 2009. Caputo is thus entitled to summary judgment.

## APPLICABLE LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008). A moving party can satisfy its burden solely by "'pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.'" *Cox v. Hartshorn*, 503 F.Supp.2d 1078, 1081 (C.D. Ill. 2007). Once the moving party has done so, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. *Id.* The nonmoving party "may not rest upon the mere allegations" contained in her pleading, but, instead, "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.

-2-

Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990);

*Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). She must "do more

than simply show that there is some metaphysical doubt as to the material facts." *Springer*, 518

F.3d at 483-84. She must show the disputed facts are "material" – that is, that such facts could

affect the outcome of the suit under the governing law – and that the dispute as to those facts is

"genuine" – that is, the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Springer*,

518 F.3d at 484; *Cox* 503 F.Supp.2d at 1082. Summary judgment "is the put up or shut up

moment in a lawsuit, when a party must show what evidence it has that would convince a trier of

fact to accept its version of the events." *Springer*, 518 F.3d at 484.

## SUMMARY OF FACTS

On August 30, 2007, Caputo opened to the public its "New Farm Market," located at 100

S. Randall Road, in Algonquin. MF 5, 8. Prior to doing so, Caputo had engaged, and at all times

relied completely on, ISSI, an independent, third-party which selected, purchased, installed,

maintained, and upgraded the electronic computer equipment that prints credit/debit card receipts

at Caputo's and the third-party software required to run the system. MF 10; *see also* MF 14-47.

Since 1986, ISSI has been in the business of selling, installing and maintaining the type of

software needed to print out credit/debit card receipts and the particular software that controls the

credit/debit card numbers printed on customer receipts. MF 11-12. ISSI selected, and advised

Caputo to use, Store Management Suite ("SMS") Pro software manufactured by another

independent, third-party, LOC Software. ISSI did not present Caputo with any other options.

MF 21. ISSI selected and installed the SMS software. MF 18.

-3-

Although the equipment (printer) physically prints the receipts, the SMS software controls how the information appears on the receipt; in other words, the software determines the format in which debit/credit card numbers are printed on receipts. MF 20. Before this lawsuit was filed, Caputo did not know that the version of the SMS software ISSI selected and installed was not compliant with FACTA or its truncation requirements. MF 22. Though ISSI knows its customers rely on it to ensure they are compliant, MF 14, ISSI never disclosed that Caputo may not be compliant with any law, rule, regulation or standard. MF 22, 44-47, 68-69.

Caputo did not know about FACTA or its truncation requirements until after this lawsuit was filed in February 2009. MF 48-79. ISSI did not disclose the existence of FACTA or FACTA's truncation requirements. MF 68-69. No other customer had ever complained to Caputo or filed a lawsuit against it for violation of FACTA or its truncation requirements. MF 50. Caputo has never had any communications from any public or private agency that receives consumer complaints regarding any violation of FACTA or its truncation requirements. MF 51. Neither Caputo nor its officers is a member of any trade association. MF 7. Except for the *Payment Card Industry (PCI) Data Security Standard, Version 1.1, Release: September 2006,* (PCI-DSS), before this lawsuit was filed, Caputo did not receive or review communications from VISA, MasterCard, American Express, Discover, or JCB or other entities about FACTA; advertisements; journals; publications; articles; or, literature referring to FACTA, truncation or truncation requirements. MF 52. Caputo never reviewed any other document that discussed FACTA or its truncation requirements before this lawsuit was filed. MF 49. Meanwhile, the September 2006 version of the PCI-DSS – which is the only version Caputo had – did not provide any information about FACTA or its truncation requirements. MF 54-56; Ex. 16. It did, however, provide, in part, that "the first six and last four digits are the maximum number of

-4-

digits to be displayed. . . ." MF 56; Ex. 16, Requirement 3. Plaintiff avers that, on February 12, 2008, she received a receipt displaying the first six and last four digits of a credit card. MF 57.

Caputo's credit/debit card transactions are processed through Fifth Third Bank Processing Solutions ("Fifth Third"), which generates monthly statements that reflect the debit/credit card transactions at Caputo's in the preceding month. MF 53, 58. Thus, for example, the statement dated September 19, 2007 is for the statement period August 2007. Ex. 17. Caputo's normal business practice is to forward all Fifth Third statements unopened to its third-party, independent accountant, Edward Izzi, who is responsible for opening and reviewing them. MF 58-59, 66. No one at Caputo's opens or reviews the statements. MF 59, 66.

Not one of the Fifth Third statements for transactions processed between August 2007 and February 2008 (the date of the transaction alleged in the Complaint) refers to FACTA or to any other law, rule, regulation or standard concerning truncation of credit/debit card numbers on printed receipts provided to consumer cardholders. MF 60; Ex. 17 (JCA 00094 – JCA-000125). Nor do those statements refer to PCI-DSS. MF 61; Ex. 17. The Fifth Third statements for the statement periods March 2008, April 2008, and May 2008 (JCA00126 - JCA00137), refer to "compliance" with PCI-DSS and to "non-storage of prohibited data subsequent to transaction authorization;" however, none of these statement refers to the truncation of credit/debit card number on printed receipts provided to consumer cardholders or to FACTA. MF 62-63; Ex. 17 (at JCA 00126, 00133, & 00137). Similarly, though they do refer to PCI-DSS compliance and to "non-storage of prohibited data subsequent to transaction authorization," for the period August 2008 through February 2009, none of the Fifth Third statements refers to FACTA or to a prohibition on printing more than the last four digits of a card number on either the merchant's receipt or the cardholder's receipt. MF 64; Ex. 17 (at JCA 000146 – JCA 000178). The July 18,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2008 statement is the first and only time during the proposed class period that Fifth Third referred to a law prohibiting the printing of more than the last four digits of a card number. MF 65; Ex. 17 (JCA 000138). Yet, as noted, as it is Caputo's normal business practice to forward the unopened statements to its outside, professional, independent accountant, Edward Izzi, no one at Caputo's reviewed this or any other merchant billing statement from Fifth Third. MF 66-67. Mr. Izzi never informed Caputo about the information in the July 2008 statement regarding truncation. MF 67.

Even if Caputo had known about FACTA and its truncation requirements (which it did not) and even if Caputo had known that the software that ISSI selected and installed was not compliant with FACTA (which it did not), Caputo could not alter LOC's proprietary software. MF 23, 29-34, 37. Neither LOC nor ISSI ever provided Caputo with the source code to make any changes to the software and how such software directed the printing of digits on the receipts. MF 23. Yet, even if it had, Caputo was not able to do so. MF 28-37. Significantly, ISSI's President, Roger Larsen, admitted that, to change the programming of the SMS software so that the credit/debit card number on receipts print with five or less numbers, ISSI and Caputo had to get a specific release (upgrade) of the software from LOC. MF 34. It is undisputed that the software upgrade was not ready for installation at Caputo's until November 2008. MF 36.

During his March 17, 2010 deposition, ISSI's President, Roger Larsen, explained the time-consuming and intensive process for the upgrade which was "a major point upgrade which involved a substantial change in the software to adhere to the PCI compliancy rules." Ex. 9, Larsen Dep., 28:23-29:1. Mr. Larsen explained that, in May 2008, LOC notified ISSI of the availability of the software. At that time, ISSI downloaded the beta version and took a look at it. ISSI then took some of their client databases, including Caputo's, and sent them to LOC Canada.

At that point, LOC took the files ISSI sent them, went through them to make sure that when they applied their new version of the software, everything was okay. After doing so, LOC sent the database back to ISSI, at which time ISSI started to do the conversion. Unfortunately, ISSI had "some issues" with the conversion scripts which required ISSI to go back to LOC and get new scripts. After those issues were resolved, ISSI tested in house and, at the end of August and early part of September 2008, ISSI decided to upgrade another client's store. During this time, ISSI continued to test Caputo's database. It was not until November 1, 2008 that ISSI concluded that Caputo's databases had "successfully passed" the necessary tests. It was at that point that ISSI was finally ready to install the upgrade for Caputo. MF 34; Ex. 9, Larsen Dep., 28:6-31:19.

Shortly before Thanksgiving in 2008, ISSI's President, Roger Larsen, told Natale Caputo that ISSI needed to upgrade the software at Caputo's. MF 38. ISSI did not disclose the purpose or reasons for the upgrade. *Id.* Natale Caputo's understanding was that the upgrade would "make us go faster" and "stream down some of my reports." *Id.* ISSI did explain to Caputo, however, that the software upgrade process would take three to four weeks at a minimum and would require ISSI to shut-down Caputo's software system and the check-out lanes. MF 39.

Caputo operates seven days per week, 364 days of the year (closed on Christmas Day), from 7 a.m. to 9 p.m. on Monday through Saturday and from 7 a.m. to 8 p.m. on Sunday. MF 40. The holiday season is Caputo's busiest time of year, generally starting the week before Thanksgiving and continuing through New Years, with an approximately 20% to 25% increase in business during this time. MF 41; *see also* MF 42. Because the upgrade process as explained by ISSI would take three to four weeks at a minimum and would interfere with and disrupt Caputo's business during its busiest time, Natale Caputo asked ISSI whether the upgrade could wait until after the holiday season. MF 43. ISSI's President, Roger Larsen, assured Caputo that

the upgrade could wait. *Id.* Even though Caputo asked ISSI whether there were any important issues Caputo needed to know about the upgrade, MF 43, ISSI never disclosed to Caputo that a purpose of the upgrade was to change the programming to truncate printing of credit/debit card number on receipts provided to Caputo's customers. MF 44. ISSI never disclosed, and Caputo did not know, that the software upgrade was to make sure that the receipts printed at Caputo's complied with the law. *Id.* ISSI never disclosed, and Caputo did not know, that any delay in the upgrade meant that Caputo may be violating a law, such as FACTA; may expose its customers to potential harm; and may expose Caputo to potential liability. MF 45. ISSI began the upgrade in early January 2009 and finished by February 2009. MF 46. Shortly after ISSI completed the upgrade, on February 12, 2009, Plaintiff filed this suit for a violation that allegedly occurred one year earlier, on February 12, 2008. MF 1-2, Ex. 1.

## ARGUMENT

FACTA, a subset of the statutes contained within the Fair Credit Reporting Act ("FCRA"), prohibits merchants from printing more than the last five digits of a credit or debit card number or the card's expiration date on receipts provided to the cardholder at the transaction. 15 U.S.C. § 1681(c)(g)(1); *see also* 15 U.S.C. § 1681, *et seq.* "Any person who willfully fails to comply" is liable to that consumer for statutory damages of "not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a). Thus, proof of "willfulness" is "a prerequisite" in this lawsuit. *Kubas v. Standard Parking Corp.*, 594 F.Supp.2d 1029, 1032 (N.D. Ill. 2009). The Supreme Court has held that willfulness in this context encompasses both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 56-57 (2007).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. **THE UNDISPUTED EVIDENCE ESTABLISHES THAT CAPUTO DID NOT "KNOWINGLY" VIOLATE FACTA.**

To demonstrate "knowing" noncompliance with FACTA, Plaintiff must show that Caputo "knowingly and intentionally" violated FACTA. *See, e.g., Philbin v. Transunion Corp.*, 101 F.3d 957, 970 (3d Cir. 1996); *Phillips v. Grendahl*, 312 F.3d 357 (8th Cir. 2002) (willful noncompliance under *15 USCS § 1681n* required knowing and intentional commission of act that defendant knew violated FCRA, 15 USCS §§ 1681 et seq.); *Dalton v Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) (same); *Cushman v Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) (same); *accord In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (stating, "willful means deliberate or intentional … in conscious disregard of one's duties or without just cause or excuse."). The undisputed facts of this case demonstrate, unequivocally, that Caputo did not knowingly violate FACTA. It is undisputed that Caputo did not know about FACTA until after Plaintiff filed this lawsuit in February 2009. MF 48-79. It is undisputed that Caputo did not know that the software ISSI selected and installed at its location, and that Caputo used from August 2007 until early February 2009, caused receipts to be printed with too many digits in violation of the law. MF 22. Further, it is undisputed that ISSI never discussed FACTA or truncation with Caputo and twice confirmed to Caputo that it was "compliant." *See* MF 68-69; MF 74-79. There is no genuine, material factual dispute and no reasonable jury could find that Caputo "knowingly" violated FACTA from August 2007 until February 2009. Caputo is thus entitled to summary judgment.

II. **THE UNDISPUTED EVIDENCE ESTABLISHES THAT CAPUTO DID NOT "RECKLESSLY" VIOLATE FACTA.**

Likewise, there is no genuine, material factual dispute and no reasonable jury could find that Caputo "recklessly" violated FACTA from August 2007 until February 2009 (the time frame

proposed by Plaintiff to define the putative class). Recklessness under the FCRA is "something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs., Inc* ., 523 F.3d 719, 726 (7th Cir. 2008). It requires "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 127 S.Ct. at 2215 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836 (1994)). Citing the Restatement (Second) of Torts, the Supreme Court noted an "'actor's conduct is [] reckless . . . if he does an act or intentionally fails to do an act which it is his duty to the other to do, ***knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of [ ] to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent*.**'" *Safeco,* 127 S.Ct. at 2215 (quoting Restatement (Second) Of Torts § 500, p. 587 (1963-1964)) (emphasis added). A company does not act in reckless disregard unless there is a showing that the company ran a risk of violating the law ***substantially greater*** than the risk associated with merely acting carelessly. *Safeco,* 127 S.Ct. at 2215 (emphasis added). Evidence of the company's conduct and its intentions is unquestionably relevant in making this determination. *Claffey v. River Oaks Hyundai, Inc.*, 494 F.Supp.2d 976, 978-79 (N.D. Ill. 2007). The undisputed evidence here establishes that Caputo did not act recklessly regarding its compliance with FACTA.

As discussed, Caputo retained and relied upon independent, third-party professionals to ensure that its equipment, computers and software were compliant with all applicable law. MF 10-47. That is ISSI's business and ISSI knows its customers, like Caputo, rely on ISSI to set things up correctly. MF 14. It is undisputed that, at all times, Caputo relied completely on ISSI to provide, maintain, and/or adapt any equipment and software so that such equipment and/or

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

software was compliant with applicable law. MF 25-27. It is undisputed that Caputo did not know, until after this lawsuit was filed, that the software ISSI selected and installed at Caputo's was directing the printing of receipts in a way that was not compliant with FACTA. MF 22, 44.

Importantly, the software upgrade necessary to resolve the truncation issue (of which Caputo was wholly unaware) was not even ready for installation at Caputo's until shortly before Thanksgiving in November 2008. Prior to the upgrade, there was no ability to go in to the SMS software and make a selection so that no (or less) card numbers printed on the receipt. MF 32, 34, 37, 47. Caputo did not have the source codes necessary to change the proprietary software, MF 30 (though, it would not have made a difference if it had as Caputo did not have the ability to make any changes to the software or system, MF 31-33). Of course, ISSI never told Caputo that the purpose of the upgrade was to bring the software into compliance or that delay may expose Caputo's customers to potential harm or subject Caputo to potential liability. MF 44-45.

The evidence clearly establishes that Caputo did not act "knowing ... of facts" which would have indicated that it was violating FACTA. Moreover, the evidence clearly demonstrates that Caputo did not have reason to know that its use of the SMS software, that ISSI had directed Caputo to and had installed, created an unreasonable risk of harm to its customers and that such risk was substantially greater than that which was necessary to make its conduct negligent. Indeed, upon learning of the possibility that there may be an issue, through a relative who was another target of one of the Alianos' many FACTA lawsuits, Caputo acted promptly; Caputo called its outside "expert", ISSI's President, Roger Larsen, who confirmed – not once, but twice – that Caputo was compliant and was not violating any laws. MF 71-79. ISSI's President, Roger Larsen, admitted he subscribes to various trade publications in his field including some in the point-of-sale industry; has received, reviewed and retained various articles on credit/debit card

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

security; is familiar with, attempts to adhere to and to make its customers compliant. MF 68. Nonetheless, ISSI never disclosed there were any compliance issues and never discussed with Caputo's what compliance with "truncation" or credit cards meant. MF 69.

To try to resurrect her dead claims, Plaintiff will undoubtedly point to two documents that she will contend create a genuine, material factual dispute as to whether Caputo acted recklessly during the period November 2008 to February 2009. First, Plaintiff likely will argue that the July 18, 2008 Fifth Third Bank Merchant Billing Statement provides evidence that, by the end of July 2008, Caputo knew of and consciously disregarded its truncation obligations under FACTA. However, as discussed, Caputo relied on its outside, independent, professional accountant to open and review these statements. In accordance with its normal business practices, Caputo sent the unopened statement to its accountant who was responsible for opening and reviewing them. Mr. Izzi never informed Caputo that there was information in the July 2008 merchant billing statement (or any other) regarding truncation. Caputo did not review the July 2008 statement until after this lawsuit was filed. Such conduct cannot reasonably give rise to an inference of willfulness.

Second, Plaintiff likely will argue that Caputo was reckless because ISSI did not perform the upgrade in November 2008 but, instead, waited until January 2009. This, too, is unavailing because, as discussed, ISSI never disclosed, and Caputo did not know, that a purpose of the upgrade was to bring the software into compliance with FACTA, or that any delay could cause potential harm to its customers. The only information ISSI gave to Caputo about the upgrade was (a) it would "stream down" the reports; and, (b) it would make the system "go faster"; but, (c) it would take a minimum of three to four weeks to complete during which time the system would need to be down and check-out lanes would be closed during unspecified periods and for

unspecified lengths of time. MF 35-47. Thus, based on the limited information ISSI provided

and because the timing would disrupt business during its busiest time of year, Caputo asked ISSI

if the upgrade could wait. Without ever telling Caputo it was, and would remain, non-compliant

with FACTA during this delay, ISSI told Caputo the upgrade could wait. MF 38, 43-45.

Although the evidence is clear and undisputed that Caputo did not know about FACTA or

its truncation requirements until after this lawsuit was filed, in prior submissions to this Court,

Plaintiff has taken a contrary position based on Caputo's prior response to Interrogatory No. 10

in which Caputo's counsel responded, in part, by stating that Caputo "first learned of truncation

requirements in September 2007 as a result of the lawsuit styled, *Aliano v. Caputo's New Farm*

*Products* [sic]*, Inc.*, No. 07 cv 03914, filed on July 11, 2007 in the United States District Court

for the Northern District of Illinois, Eastern Division." Yet, as Caputo has explained, because

Caputo was not familiar with FACTA or the terms "truncation" or "truncation requirements"

before this lawsuit was filed, MF 70, in responding to this interrogatory, Caputo understood

Plaintiff to be inquiring about the first time Caputo had learned there might be any issues with

compliance. MF 71-79; Ex. 20. As Caputo has also explained, Caputo first became aware of a

possible compliance issue as a result of a phone call Caputo received from a cousin-in-law,

Robertino Presta, who had been sued by Aliano. MF 71-79. Mr. Presta's company was named

as a defendant, styled *Aliano v. Caputo's New Farm Produce, Inc.*, No. 07 cv 03914, filed on

July 11, 2007 in the United States District Court for the Northern District of Illinois, Eastern

Division. MF 72; Ex. 19. Caputo was not named as a defendant and was not served with

process in Aliano's 2007 lawsuit; in fact, Caputo did not even see a copy until Natale Caputo's

deposition in June 2010. MF 73; Ex. 19.

In any event, sometime after Caputo's opened to the public, in 2007 or 2008, Mr. Presta called Natale Caputo and told him that Mr. Presta's company had been sued. Mr. Presta was not specific, however. He did not mention FACTA. He did not mention "truncation" or "truncation requirements." He did not even explain why his company was being sued. He did, however, say that the suit had something to do with credit cards. MF 74-75. Promptly following this telephone call with Mr. Presta, Natale Caputo called ISSI and asked its President, Roger Larsen, whether Caputo was doing anything wrong. MF 76. ISSI (through Larsen) represented and warranted to Caputo that Caputo was compliant. *Id.*

Subsequently, months later, Natale Caputo received another telephone call from Mr. Presta who advised that, while in Court for the *New Farm Produce* case, he had been told there was still "something wrong" with the credit cards and mentioned "five numbers." He did not explain further, however, and still did not mention FACTA or truncation. MF 77. After this telephone call, Natale Caputo called ISSI again. Once again, ISSI (through Larsen) represented and warranted that Caputo was compliant and was not breaking any laws. MF 78-79.

## CONCLUSION

This is but one of the many hundreds of destructive, cookie-cutter lawsuits that Congress lamented have been filed by plaintiffs, like Plaintiff Kathy Aliano, seeking a windfall through statutory damages where there has been no actual injury. Even if she has standing (which she still has not established), there are no genuine, material factual disputes and no reasonable jury could find Caputo's actions were willful. There is no evidence that Caputo acted "knowingly" from August 2007 until February 2009. Further, no jury could find that Caputo's acted "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of [ ] to another, but also that such risk is

-14-

substantially greater than that which is necessary to make his conduct negligent." Caputo did not know about FACTA until after this lawsuit was filed. Caputo did not know that the software ISSI selected and installed was not compliant with the law. Indeed, the professionals on whom Caputo relied, repeatedly advised Caputo that it was compliant. Further, even if Caputo had such knowledge (which it did not), it is undisputed that Caputo did not have the ability to alter the proprietary software and had to wait for the manufacturer to release its software update which was not ready to be installed at Caputo's until November 2008. Of course, the independent, third party responsible for purchasing, installing, and maintaining the equipment and software – and for ensuring compliance – never disclosed to Caputo that the software upgrade was intended to bring Caputo into compliance or that any delay in upgrading may expose Caputo's customers to potential injury or Caputo to potential liability. In short, other than the fact that a violation occurred, there is no factual basis upon which a jury could reasonably infer that any violation was willful. Caputo is thus entitled to summary judgment on all claims from August 2007 until February 2008. At a minimum, Caputo is entitled to summary judgment as to claims for the period August 2007 until November 2008 because it is undisputed that the necessary software upgrade was not ready until then.

Respectfully submitted,

/s Allison L. Kashon

**DOHERTY & PROGAR LLC**
Michael J. Progar (ARDC No. 6181280)
200 West Adams Street, Suite 2220
Chicago, IL 60606
Telephone: (312) 630-9630
Facsimile: (312) 630-9001
Email: mjp@doherty-progar.com

**FOX ROTHSCHILD LLP**
John J. Haggerty (*pro hac vice*)
Stephanie B. Fineman (*pro hac vice*)
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
Email: jhaggerty@foxrothschild.com
        sfineman@foxrothschild.com

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: August 9, 2010*

*Attorneys for Defendant,*
*Joe Caputo and Sons – Algonquin, Inc.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT