IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY ALIANO<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOE CAPUTO & SONS – ALGONQUIN, INC., An Illinois Corporation, individually and d/b/a JOE CAPUTO & SONS FRUIT MARKET; and DOES 1-10,<br><br>　　　　Defendants. | CIVIL ACTION No. 09-CV-0910<br><br>Hon. Harry D. Leinenweber<br>Magistrate Judge Mason<br><br>*Returnable: Tuesday, August 24, 2010* |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1(A)(3) IN SUPPORT OF
DEFENDANT JOE CAPUTO & SONS – ALGONQUIN, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**DOHERTY & PROGAR LLC**
Michael J. Progar (ARDC No. 6181280)
200 West Adams Street, Suite 2220
Chicago, IL 60606
Telephone: (312) 630-9630
Facsimile: (312) 630-9001
Email: mjp@doherty-progar.com

**FOX ROTHSCHILD LLP**
John J. Haggerty (*pro hac vice*)
Stephanie B. Fineman (*pro hac vice*)
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
Email: jhaggerty@foxrothschild.com
　　　　sfineman@foxrothschild.com

Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: August 9, 2010*

*Attorneys for Defendant,
Joe Caputo and Sons – Algonquin, Inc.*

## THE PARTIES, JURISDICTION AND VENUE

1. On February 12, 2009, Plaintiff Kathy Aliano ("Plaintiff") filed a putative Class Action Complaint against Joe Caputo & Sons – Algonquin, Inc. ("Caputo") for alleged willful violation of Section 1681(g) of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act (15 U.S.C. § 1681c(g)(1)). Ex. 1, *Complaint*.

2. In this action, on behalf of herself and the putative class, Plaintiff seeks statutory damages of $100 to $1,000 per violation, plus attorney's fees and costs, for Caputo's alleged willful violation of FACTA. Ex. 1, Complaint, at ¶4 and Wherefore clause.

3. In the Complaint, Plaintiff alleged, "This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal question), and 15 U.S.C. § 1681p (FCRA)" and that "Venue in this District is proper because Defendants transact business in the District and are deemed to reside here."[1] Ex. 1, Complaint, ¶¶ 11-12.

4. Plaintiff is an adult individual and resident of Illinois, with an address at 1019 S. Summit Avenue, Villa Park, Illinois. Ex. 3, *Plaintiff's Answer to Defendant Joe Caputo & Sons – Algonquin's Interrogatories*, dated November 2009 ("11/09 Interrogatory Responses"), at ¶1.

5. Caputo is an Illinois corporation, doing business as "Joe Caputo & Sons Fruit Market," with its principal place of business at 100 S. Randall Road, Algonquin, Illinois. Ex. 2, *Answer To Plaintiff's Class Action Complaint*, filed May 22, 2008 [Docket No. 22], at ¶7; *see also* Ex. 10, *June 25, 2010 Transcript of Deposition of Natale Caputo* ("N. Caputo Dep.") at 16:8-11; Ex. 21, *August 6, 2010 Declaration of Natale Caputo* ("8/6/10 N. Caputo Decl.") at ¶¶2-4; Ex. 22, *August 6, 2010 Declaration of Vito Caputo* ("V. Caputo Decl.") at ¶¶2-4.

---

[1] To date, Plaintiff has not produced evidence establishing she was a "consumer cardholder" at the time of the alleged transaction. Without waiving any rights or defenses, Caputo assumes for purposes of this Motion only that Plaintiff has standing and that subject matter jurisdiction and venue are proper.

6. Natale Caputo and Vito Caputo are officers, directors and shareholders of Caputo's. Natale Caputo is, and at all relevant times was, Caputo's President. Vito Caputo is, and at all relevant time was, Caputo's Vice-President, Treasurer and Secretary. Ex. 10, N. Caputo Dep., at 47:13-16, 101:23-102:8, 103:1-19, 108:15-109:2; Ex. 21, 8/6/10 N. Caputo Decl. at ¶¶ 2-3; Ex. 22, V. Caputo Decl., at ¶¶2-3; *see also* Ex. 20, *June 2, 2010 Declaration of Natale Caputo* ("6/2/10 N. Caputo Decl.") at ¶1.

7. Caputo is not a member of any trade association. Neither Natale Caputo nor Vito Caputo belong to any trade associations. Ex. 5, *Defendant's 11/09 Responses To Interrogatories*, No. 12.

8. Caputo first began operations on August 27, 2007 and opened its doors to the public on August 30, 2007. Ex. 20, 6/2/10 N. Caputo Decl., at ¶4; Ex. 7, *Defendant's Objections And Supplemental Responses To Plaintiff's Second Set Of Interrogatories*, dated May 18, 2010 ("Defendant's 5/18/10 Interrogatory Responses"), No. 1; *accord* Ex. 9, *March 17, 2010 Transcript of Deposition of Roger P. Larsen* ("Larsen Dep.") at 80:12-14; *see also* Ex. 8, *Defendant's Second Supplemental Responses To Plaintiff's Second Set of Interrogatories*, dated June 3, 2010 ("Defendant's 6/3/10 Interrogatory Responses"), No. 1.

9. Caputo is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA. Ex. 4, *Defendant's Responses To Plaintiff's Requests for Admission,* dated August 17, 2009, No. 1.

## CAPUTO RETAINS INTEGRATED STORE SYSTEMS, INC. TO SUPPLY, INSTALL AND MAINTAIN EQUIPMENT AND SOFTWARE COMPLIANT WITH THE LAW

10. Prior to opening, Caputo retained Integrated Store Systems, Inc. ("ISSI") for the purchase and/or upgrading of electronic or computer equipment that prints credit/debit card receipts and for the purchase and/or upgrading of software for such equipment. Ex. 20, 6/2/10 N. Caputo Decl., at ¶5; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶5-14; Ex. 22, V. Caputo Decl., at ¶¶5-8; Ex. 9, Larsen Dep., at 10:14-21; Ex. 7, *Defendant's 5/18/10 Interrogatory Responses*, Nos. 1-4, 6-7; Ex. 8, *Defendant's 6/3/10 Interrogatory Responses*, Nos. 1-4, 6-7; Ex. 13, *Integrated Store Systems, Inc. Acceptance Agreement*, dated May 4, 2007; Ex. 14, *Integrated Store Systems, Inc. Invoices*, dated June 26, 2007; September 8, 2007; and May 2, 2007.

11. ISSI is a point of sales system reseller; ISSI provides retailers with a system for their stores, consisting of cash registers, scanners or printers, cash drawers, application software, operating systems and servers. ISSI also provides system security such as firewalls and switches. Ex. 9, Larsen Dep., at 7:12-24; *accord* Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶5,7.

12. Since 1986, ISSI has been in the business of selling, installing and maintaining the type of software needed to print out credit/debit card receipts and the particular software that controls the credit/debit card numbers printed on customer receipts. Ex. 9, Larsen Dep., at 128:2-9, 56:4-9; *see also* Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1-4, 6-7; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 1-4, 6-7.

13. Roger Larsen is the owner and President of ISSI and is responsible for hiring ISSI employees. Ex. 9, Larsen Dep., at 7:5-11; 9:4-8, 58:15-59:12.

14. ISSI's President, Roger Larsen, admitted that, ISSI's customers rely on ISSI to set things up correctly. Ex. 9, Larsen Dep., at 47:8-50:10, 56:1-3.

3

15. On or about May 4, 2007, ISSI entered into a written agreement with Caputo. Ex. 9, Larsen Dep., at 19:1-18; 21:13-18; 101:15; 102:11-18; Ex. 13, Integrated Store Systems, Inc. Acceptance Agreement, dated May 4, 2007; Ex. 21, 8/6/10 N. Caputo Decl., at ¶8.

16. In exchange for payment by Caputo of $155,875, ISSI agreed to provide and did provide Caputo with electronic and computer equipment and software including, but not limited to, the server, operating systems, cash register, operator display, cash drawer, customer display, wireless hand-helds and a wireless access point, power protection, switches, firewalls, hardware and scanner scales, rack mounting equipment, PIN pad (which is where consumers swipe their debit and/or credit cards requiring a Personal Identification Number ("PIN") and input their PIN); networking equipment, application software, support software. Ex. 9, Larsen Dep., at 12:6-21; 15:16-18; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶7-8; *see also* Ex. 13, Integrated Store Systems, Inc. Acceptance Agreement, dated May 4, 2007; Ex. 14, Integrated Store Systems, Inc. Invoices; Ex. 15, *Equipment description.*

17. Although the May 4, 2007 written agreement between ISSI and Caputo did not specifically identify credit/debit card equipment to be provided by ISSI, (*see* Ex. 13), ISSI did, in fact, purchase, install and bill Caputo for credit/debit card processing equipment. Ex. 9, Larsen Dep. at 77:14-78:12; 78:24-79:6; 79:20-23; 80:16-81:1; Ex. 14, Invoice; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶8-9; *see also* Ex. 9, Larsen Dep., at 103:18-104:17.

18. The application software ISSI purchased and installed at Caputo's is manufactured by LOC Software, a Canadian company, and is known as Store Management Suite ("SMS"). Ex. 10, N. Caputo Dep., at 120:4-12; 123:2-5; Ex. 9, Larsen Dep., at 12:10-18; 29:6-12; 69:10-17; 70:8-10; 103:18-104:4; 105:20-106:4; *see also* Ex. 11, *June 25, 2010 Transcript of Deposition of Lily Murillo* ("Murillo Dep."), at 7:2-11; Ex. 21, 8/6/10 N. Caputo Decl., at ¶10.

4
STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

19. LOC manufactures application software for use in the retail point of sale industry. The software runs cash registers, maintains the database of goods sold (inventory), has a ticketing capability to create shelf labels and signage, and the capability of interfacing with other hardware components such as hand-held scanners, cash drawer, credit/debit card equipment, and the receipt printer. Ex. 9, Larsen Dep., at 40:7-45:3.

20. The purpose of the credit/debit card equipment is to take information from the stripe on the debit/credit card and transmit the information for approval; the credit/debit card equipment does not cause or determine the information printed on a receipt. Ex. 9, Larsen Dep., at 74:18-75:15. Rather, although the printer physically prints the receipts, it is the application software that is responsible for telling the printer what information is to be printed on the receipt and in what format. Ex. 9, Larsen Dep., at 73:5-74:6, 111:24-112:2; *see also* Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1-2, 6.

21. The President of ISSI, Roger Larsen, selected LOC's SMS software and advised Caputo's to use it; ISSI did not present Caputo with any other software options. Ex. 10, N. Caputo Dep., at 120:4-121:3; Ex. 9, Larsen Dep., at 124:5-7; Ex. 21, 8/6/10 N. Caputo Decl., at ¶10; *see also*, Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1-2; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 1-2.

22. Caputo did not know until after this lawsuit was filed in February 2009 that the SMS software that ISSI selected and installed and that Caputo's used from August 2007 until February 2009 may not have been compliant with FACTA or truncation requirements. Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶15-16; Ex. 22, V. Caputo Decl., at ¶10.

23. After ISSI installed the equipment and software, ISSI did not provide Caputo with source codes or pass codes to access the software to make changes to it. Ex. 10, N. Caputo Dep., at 125:6-19; Ex. 9, Larsen Dep., at 124:9-19; Ex. 21, 8/6/10 N. Caputo Decl. at ¶11.

24. At all times, Caputo relied completely on ISSI to provide, maintain, and/or adapt any equipment and software so that such equipment and/or software was compliant with applicable law. Ex. 20, 6/2/10 N. Caputo Decl., at ¶6; Ex. 21, 8/6/10 N. Caputo Decl., at ¶12; Ex. 22, V. Caputo Decl., at ¶¶6-8; *see also* Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1- 4, 6-7; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 1-4, 6-7; Ex. 6, *Defendant's Responses to Plaintiff's Request For Production*, dated November 2009 ("Defendant's 11/09 Responses To RFP"), at No. 18.

25. At all times, Caputo relied completely on Roger Larsen and ISSI for compliance with truncation requirements. Ex. 20, 6/2/10 N. Caputo Decl., at ¶6; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶12-14; Ex. 22, V. Caputo Decl., at ¶¶6-8; Ex. 5, Defendant's 11/09 Interrogatory Responses, No. 1; Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1- 4, 6-7; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 1-4, 6-7; *see also* Ex. 6, *Defendant's 11/09 Responses To RFP*, at No. 2.

26. At all times, Caputo relied completely on Roger Larsen and ISSI for the maintenance, inspection and testing of electronic or computer equipment or software for such equipment that prints debit/credit card receipts. Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶5-6; Ex. 21, 8/6/10 N. Caputo Decl., at ¶13; Ex. 22, V. Caputo Decl., at ¶7; Ex. 5, Defendant's 11/09 Interrogatory Responses, No. 1; Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1- 4, 6-7; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 1-4, 6-7.

27. At all times, Caputo relied completely on Roger Larsen and ISSI to upgrade electronic or computer equipment or software for such equipment that prints debit/credit card receipts. Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶5-6; Ex. 21, 8/6/10 N. Caputo Decl., at ¶14; Ex. 22, V. Caputo Decl., at ¶8; Ex. 5, Defendant's 11/09 Interrogatory Responses, No. 1; Ex. 7, Defendant's 5/18/10 Interrogatory Responses, Nos. 1- 4, 6-7; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 1-4, 6-7.

28. Caputo also relied on the software manufacturer, LOC, to upgrade its software in a timely manner and in a manner compliant with all applicable law. *See* Ex. 7, Defendant's 5/18/10 Interrogatory Responses, No. 1.

29. ISSI's President, Roger Larsen, admitted the software is a proprietary, licensed product; the software belongs to the manufacturer, LOC Software, and the user does not own it but only has a license to use it. All rights to that software reside with the manufacturer. Ex. 9, Larsen Dep., at 106:10-107:19; *see also id.* at 98:4-8; 99:16-23; 125:7-20. *See also* Ex. 20, 6/2/10 N. Caputo Decl., at ¶21.

30. LOC Software controls its SMS software and access to its SMS software and source code. LOC Software did not provide ISSI or anyone at Caputo with the source code for the SMS software. Ex. 9, Larsen Dep., at 124:9-19; 134:18-24; Ex. 21, 8/6/10 N. Caputo Decl., at ¶11; Ex. 20, 6/2/10 N. Caputo Decl., at ¶22; *see also* Ex. 9, Larsen Dep., at 144:20-23.

31. Caputo understood that it did not have the legal right to make changes to LOC's software. Ex. 20, 6/2/10 N. Caputo Decl., at ¶21; Ex. 21, 8/6/10 N. Caputo Decl., at ¶11.

32. No one at ISSI or at Caputo had the ability to change or modify the LOC software to truncate any more debit and/or credit card numbers off the receipts. Ex. 9, Larsen Dep., at

125:22-126:3, 150:1-6; 158:19-23; Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶22-23; Ex. 21, 8/6/10 N. Caputo Decl., at ¶11; *see also* Ex. 8, Defendant's 6/3/10 Interrogatory Responses, No. 7.

33. Caputo does not have an employee (or team of employees) capable of and responsible for programming or making changes to any computer system or software; Caputo does not have people in-house who specialize in computers or are knowledgeable with computers; Caputo does not have an information technology or computer team. Ex. 10, N. Caputo Dep., at 124:18-24; 125:1-5; Ex. 21, 8/6/10 N. Caputo Decl., at ¶11; *see also* Ex. 8, Defendant's 6/3/10 Interrogatory Responses, No. 7.

34. ISSI's President, Roger Larsen, testified that ISSI has no control over the software and what it does and that, to change the programming of the SMS software so that the credit/debit card number on receipts print with five or less numbers, the software manufacturer, LOC, had to provide a specific release (upgrade) of the software. Ex. 9, Larsen Dep., at 125:22-126:3; 144:20-21.

35. ISSI's President, Roger Larsen, testified that, from in or about May 2008 until November 2008, LOC and ISSI were performing necessary analyses, updating and testing of the LOC software upgrade. Ex. 9, Larsen Dep., at 28:6-31:19.

36. ISSI's President, Roger Larsen, admitted that the software upgrade for Caputo's, which would change the programming so that the credit/debit card number on receipts print with five or less numbers, was not ready for Caputo's until November 2008. Ex. 9, Larsen Dep., at 30:23-31:19; *see also id.* at 28:6-30:22.

37. ISSI's President, Roger Larsen, acknowledged that, prior to the upgrade, there was no ability to go in to the software and make a selection so that no (or fewer) card numbers printed on the receipt. Ex. 9, Larsen Dep., at 158:19-23.

38. Shortly before the Thanksgiving holiday in 2008, ISSI's President, Roger Larsen, told Natale Caputo that ISSI needed to upgrade the software at Caputo's. ISSI did not disclose the purpose or reasons for the upgrade. Natale Caputo's understanding was that the upgrade would "make us go faster" and "stream down some of my reports." Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶12, 17; Ex. 10, N. Caputo Dep., at 73:6-74:3; Ex. 9, Larsen Dep., at 31:5-32:14; *see also id.* at 141:4-17. *See also* Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 4, 7.

39. ISSI did explain to Caputo, however, that the software upgrade process would take three to four weeks at a minimum and would require ISSI to shut-down Caputo's software system and the check-out lanes. Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶12-18; Ex. 9, Larsen Dep., at 31:5-32:6.

40. Caputo operates seven days per week, 364 days of the year (closed on Christmas Day), from 7 a.m. to 9 p.m. on Monday through Saturday and from 7 a.m. to 8 p.m. on Sunday. Ex. 20, 6/2/10 N. Caputo Decl., at ¶13.

41. Caputo's busiest time of year with regard to customers and sales is during the holiday season – generally starting the week before Thanksgiving and continuing through New Years, with an approximately 20% to 25% increase in business during this time. Ex. 20, 6/2/10 N. Caputo Decl., at ¶14.

42. All check out lanes are operational during Caputo's holiday season, and all lanes are operated on weekends and during Caputo's peak hours. Any interruption or delay in

9
STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

operations, such as shutting down the software system and check-out lanes, during Caputo's holiday season, would impact Caputo's business. Ex. 20, 6/2/10 N. Caputo Decl., at ¶15.

43. Because the upgrade process as explained by ISSI would take three to four weeks at a minimum and would interfere with and disrupt Caputo's business during its busiest time of the year, Natale Caputo asked ISSI whether there were any "important issues" Caputo's needed to know about the upgrade and whether the upgrade could wait until after the holiday season. ISSI's President, Roger Larsen, assured Caputo that the upgrade could wait. Ex. 20, 6/2/10 N. Caputo Decl., at ¶16; Ex. 10, N. Caputo Dep., at 73:21-74:3; Ex. 9, Larsen Dep., 141:4-14.

44. ISSI never disclosed, and Caputo did not know, that the software upgrade was to make sure that the receipts printed at Caputo's complied with the law. Ex. 20, 6/2/10 N. Caputo Decl., at ¶17. *See also* Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 4, 7.

45. Caputo did not know or understand at the time, and ISSI did not explain, that any delay in the upgrade process meant that Caputo may be in violation of any law, such as FACTA, expose Caputo's customers to potential harm, and expose Caputo's to potential liability. Ex. 20, 6/2/10, N. Caputo Decl., at ¶18; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 4, 7.

46. ISSI began performing the software upgrade at Caputo's in early January 2009 but did not complete it until early February 2009. Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶19-20; Ex. 9, Larsen Dep., 32:8-15; 33:20-23; *see also* Ex. 8, Defendant's 6/3/10 Interrogatory Responses, No. 4.

47. ISSI's President, Roger Larsen, admitted that before the LOC Software upgrade in February 2009, neither he nor anyone at ISSI had the ability to modify the LOC software to truncate any more credit card numbers off the receipt. Ex. 9, Larsen Dep., at 150:1-6.

## CAPUTO DID NOT KNOW OF FACTA UNTIL THIS LAWSUIT WAS FILED

48. Caputo did not know about FACTA or its truncation requirement until after Plaintiff filed this lawsuit in February 2009. Ex. 20, 6/2/10 N. Caputo Decl., at ¶7; Ex. 21, 8/6/10 N. Caputo Decl., at ¶17; *see also id.* at ¶¶15-23; Ex. 22, V. Caputo Decl., at ¶¶9-16; Ex. 10, N. Caputo Dep., at 66:18-24; 133:8-136:20; *see also id.* at 62:10-23; Ex. 8, Defendant's 6/3/10 Interrogatory Responses, Nos. 6, 7.

49. Caputo never reviewed any document that discussed FACTA or its truncation requirements before this lawsuit was filed. Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶15-23; Ex. 22, V. Caputo Decl., at ¶¶9-16.

50. Before this lawsuit was filed, no customer had ever complained to Caputo about the digits that may have been printed on receipts and no customer had filed any lawsuits against Caputo for alleged violation of FACTA. Ex. 5, Defendant's 11/09 Interrogatory Responses, No. 7; *see also* Ex. 6, Defendant's 11/09 Responses To RFP, Nos. 28-32; Ex. 21, 8/6/10 N. Caputo Decl., at ¶18; Ex. 22, V. Caputo Decl., at ¶12.

51. Caputo has never had any communications from public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, Better Business Bureau, or newspaper) relating to FACTA, the FCRA, truncation, truncation requirements, and/or compliance by Caputo. Ex. 21, 8/6/10 N. Caputo Decl., at ¶19; Ex. 22, V. Caputo Decl., at ¶13; *see also* Ex. 6, Defendant's 11/09 Responses To RFP, Nos. 31-32.

52. Before this lawsuit was filed (except for the *Payment Card Industry (PCI) Data Security Standard, Version 1.1, Release: September 2006*, (PCI-DSS)), Caputo did not receive or review advertisements; journals; publications; articles; literature; or communications from VISA, MasterCard, American Express, Discover, JCB or other entities about FACTA or truncation requirements. Ex. 5, Defendant's 11/09 Interrogatory Responses, Nos. 1, 11-13; Ex. 6, Defendant's 11/09 Responses To RFP, Nos. 1-27; Ex. 21, 8/6/10 N. Caputo Decl., at ¶20.

53. Caputo's credit/debit card transactions are processed through and by Fifth Third Bank Processing Solutions ("Fifth Third"). Ex. 5, Defendant's 11/09 Interrogatory Responses, No. 9; Ex. 21, 8/6/10 N. Caputo Decl., at ¶21; Ex. 22, V. Caputo Decl., at ¶15.

54. In or about December 2006, Fifth Third provided Caputo with a copy of the September 2006 PCI-DSS as an enclosure to its Merchant Services Proposal. Caputo never received an updated or revised version of the PCI-DSS. Ex. 21, 8/6/10 N. Caputo Decl., at ¶20; *See* Ex. 16, PCI-DSS.

55. The September 2006 PCI-DSS does not address, discuss, or refer to FACTA or to any other law prohibiting printing the expiration date or more than the last four digits of a card number on either the merchant's receipt or the cardholder's receipt. Ex. 16, PCI-DSS.

56. Requirement 3 of the September 2006 PCI-DSS, provides, in part, that "the first six and last four digits are the maximum number of digits to be displayed. . . ." Ex. 16, PCI-DSS.

57. In the Complaint, Plaintiff alleged, "On February 12, 2008, Plaintiff received from Defendant(s) at their establishment located at 100 S. Randall Road, Algonquin, Illinois, a computer-generated cash register receipt which displayed the first six digits and last four digits of the Plaintiff's credit card number. *See* Ex. 1, Complaint, at ¶13.

58. Fifth Third generates monthly statements that reflect the debit/credit card transactions that were processed at Caputo's in the preceding month. *See* Ex. 10, N. Caputo Dep., at 85:13-24; Ex. 21, 8/6/10 N. Caputo Decl., at ¶21; Ex. 22, V. Caputo Decl., at ¶15.

59. It is Caputo's normal custom and practice in its business to forward the unopened Fifth Third statements to its outside, independent accountant, Edward Izzi, who is responsible for opening and reviewing them. No one at Caputo's reviews the Fifth Third statements. Ex. 10, N. Caputo Dep., at 21:15-19; 22:8-23:16; 71:1-72:16; 131:1-11; 132:14-22; Ex. 11, Murillo Dep., at 9:13-10:1; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶21-23; Ex. 22, V. Caputo Decl., at ¶¶15-16.

60. For the period August 2007 through February 2008 (the date of the transaction alleged in the Complaint), none of the Fifth Third statements refers to FACTA or to any other law, rule, regulation or standard concerning truncation of credit/debit card numbers on printed receipts provided to consumer cardholders. Ex. 17 (at JCA 00094 – JCA 000125).

61. For the period August 2007 through February 2008 (the date of the transaction alleged in the Complaint), none of the Fifth Third statements refers to PCI-DSS. Ex. 17 (at JCA 00094 – JCA 000125).

62. The Fifth Third statements for the statement periods March 2008, April 2008, and May 2008 do not refer to FACTA or to any other law concerning truncation of credit / debit card numbers on printed receipts provided to consumer cardholders. Ex. 17 (at JCA 00126 - JCA 00137).

63. The Fifth Third statements for the statement periods March 2008, April 2008, and May 2008 (JCA 00126 - JCA 00137), refer to "compliance" with PCI-DSS and to "non-storage of prohibited data subsequent to transaction authorization, which includes the full contents of any track on a card's magnetic stripe, CVV2 (the three digit authentication code on the card's signature panel), and the PIN/encrypted PIN block;" however, none of these statements refer to the truncation of credit/debit card number on printed receipts provided to consumer cardholders or to FACTA. Ex. 17 (at JCA 00126, 00133, & 00137).

64. For the period August 2008 through February 2009, none of the Fifth Third statements refers to FACTA or to a prohibition on printing more than the last four digits of a card number on either the merchant's receipt or the cardholder's receipt. Ex. 17 (at JCA 000146 – JCA 000178).

65. In its Merchant Billing Statement dated July 18, 2008, for the first and only time between August 2007 and February 2009, Fifth Third referred to a law concerning truncation of credit/debit card numbers as follows:

> Current laws prohibit printing the expiration date or more than the last four digits of a card number on either the merchant's receipt or the cardholder's receipt which may result in statutory fines or penalties. Please review the receipts you provide to your customers for compliance and work with your legal counsel to ensure your business is in compliance with all federal, state, and local laws and regulations that apply to your acceptance of cards or that otherwise govern your business.

Ex. 17 at JCA 000138.

66. Before this lawsuit was filed, Caputo did not open or review the July 2008 Merchant Billing Statement from Fifth Third Bank or any of the other Merchant Billing Statements from Fifth Third Bank. Ex. 10, N. Caputo Dep., at 21:15-19; 22:8-23:16; 71:1-72:16; 131:1-11; 132:14-22; Ex. 11, Murillo Dep., 9:13-10:1; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶21-23; Ex. 22, V. Caputo Decl., at ¶¶15-16.

67. Mr. Izzi never informed Caputo that there was information in the July 2008 merchant billing statement (or any other) regarding truncation. Ex. 10, N. Caputo Dep., at 132:14-22; Ex. 21, 8/6/10 N. Caputo Decl., at ¶22.; Ex. 22, V. Caputo Decl., at ¶16.

68. ISSI's President, Roger Larsen, admitted he subscribes to various trade publications in his field including in the point-of-sale industry; has received, reviewed and retained various articles on credit/debit card security; is familiar with, attempts to adhere to and to make its customers compliant with PCI-DSS; but, it is not ISSI's custom or practice to inform its customers about any changes in credit/debit card security regulations. Ex. 9, Larsen Dep., at 47:8-50:10; 116:14-117:17; 120:24-121:3.

69. ISSI's President, Roger Larsen, admitted that he (ISSI) never discussed with Caputo's what compliance with truncation of credit cards meant. Ex. 9, Larsen Dep., at 133:12-16.

70. Before this lawsuit was filed, Caputo was not familiar with the terms "truncation" or "truncation requirements" as regards its receipts. Ex. 20, 6/2/10 N. Caputo Decl., at ¶7; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶15-17; Ex. 22, V. Caputo Decl., at ¶9.

15
STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

71. Caputo first became aware of a potential issue as a result of a phone call Natale Caputo received from his cousin-in-law, Robertino Presta, regarding a lawsuit in which Mr. Presta's company, Caputo's New Farm Produce, Inc., was named as a defendant. Ex. 20, 6/2/10 N. Caputo Decl., at ¶¶8-11; Ex. 10, N. Caputo Dep., at 66:5-24; 134:24-136:20; *see also id.* at 25:18-27:12; 28:17-29:19.

72. In July 2007, through her counsel, Thomas A Zimmerman, Esquire, plaintiff Kathy Aliano sued Caputo's New Farm Produce, Inc. in a lawsuit styled, *Aliano v. Caputo's New Farm Produce, Inc.*, No. 07 cv 03914, in the United States District Court for the Northern District of Illinois, Eastern Division. Ex. 19; *see also* Ex. 23, Declaration of Robertino Presta ("Presta Decl."), at ¶3.

73. Caputo was not named as a defendant and was not served with process in the lawsuit styled *Aliano v. Caputo's New Farm Produce, Inc.*, No. 07 cv 03914, filed on July 11, 2007. *See* Ex. 19. *See also* Ex. 10, N. Caputo Dep., at 29:5-8. Caputo's registered agent and outside general counsel, Michael A. Alesia, Esquire, was not served with and has never seen a copy of that lawsuit. Ex. 12, Transcript of July 8, 2010 Deposition of Michael A. Alesia, Esquire ("Alesia Dep."), at 7:21-8:16; 14:21; 15:16-20. In fact, Caputo did not even see a copy of the lawsuit until Natale Caputo's deposition on June 25, 2010. Ex. 10, N. Caputo Dep., at 135:15-136:8.

74. Sometime in 2007 or 2008, Mr. Presta of Caputo's New Farm Produce, Inc., which is a separate and independent company from Caputo, telephoned Natale Caputo regarding the lawsuit that had been filed by the Plaintiff in this case, Kathy Aliano (through her counsel in this case, Thomas Zimmerman of Zimmerman Law Offices, P.C.). Mr. Presta told Natale Caputo that Aliano had sued Mr. Presta's company for allegedly not being "compliant." Ex. 20,

6/2/10 N. Caputo Decl., at ¶¶8-11; *see also* Ex. 10, N. Caputo Dep., at 32:11-21; 33:1-3; *see also id.* at 61:5-23; Ex. 23, Presta Decl., at ¶4.

75. More specifically, Mr. Presta indicated that the lawsuit had something to do with credit cards and asked Natale Caputo whether he was doing anything wrong. Mr. Presta was not specific. He did not mention FACTA. He did not mention "truncation" or "truncation requirements." He did not explain why his company was being sued. He did not mention anything about receipts. He did not mention anything about the number of digits on credit / debit card receipts. Ex. 10, N. Caputo Dep., at 25:20-26:13; 28:17-29:1; 29:9-19; Ex. 23, Presta Decl., at ¶4.

76. After the call with Mr. Presta ended, Natale Caputo promptly called Roger Larsen, the professional that ISSI hired to make sure its IT was all in working order and to make sure Caputo's was following everything to the letter of the law. Natale Caputo asked Roger Larsen whether Caputo was doing anything wrong with its credit cards. Mr. Larsen told Caputo that Caputo was not breaking any laws and was compliant. Ex. 10, N. Caputo Dep., at 25:20-26:13; 29:17-19; 32:11-21; 34:21-35:24; Ex. 20, 6/2/10 N. Caputo Decl., at ¶10; Ex. 9, Larsen Dep., at 134:18-21; *see also id.* at 128:19-129:5.

77. Subsequently, several months later, while in a car with Michael Alesia, Natale Caputo received another telephone call from Mr. Presta who advised that there was still "something wrong" and mentioned five numbers but was not specific as to what he meant by that. He did not mention FACTA. He did not mention "truncation" or "truncation requirements." Ex. 20, 6/2/10 N. Caputo Decl., at ¶11; *see also* Ex. 10, N. Caputo Dep., at 26:14-27:6; 36:1-37:1; 37:11-14; 69:18-19; Ex. 12, Alesia Dep., at 19:16-24; 22:3-19; *but see* Ex. 23, Presta Decl., at ¶5.

78. After this telephone call, in the presence of Michael Alesia, Esquire, Natale Caputo called ISSI's President, Roger Larsen, to confirm again that Caputo was compliant. During this call, Natale Caputo specifically asked Mr. Larsen about "five numbers." Ex. 20, 6/2/10 N. Caputo Decl., at ¶11; Ex. 10, N. Caputo Dep., at 26:14-27:6; 36:1-37:1; 37:11-14; 69:7-70:8; Ex. 9, Larsen Dep., at 134:18-21; Ex. 12, Alesia Dep., at 19:16-24; 22:3-23:17.

79. Natale Caputo testified that, in response to his inquiries, Mr. Larsen represented Caputo was "fine" and that Caputo was "not breaking any laws." ISSI's President, Roger Larsen, admitted he told Caputo it was "compliant." Ex. 20, 6/2/10 N. Caputo Decl., at ¶11; Ex. 10, N. Caputo Dep., at 26:14-27:6; 36:1-37:1; 37:11-14; 69:7-70:8; 124:5-17; Ex. 9, Larsen Dep., at 134:18-21; Ex. 12, Alesia Dep., at 19:16-24; 22:3-23:17.

Respectfully submitted,

**DOHERTY & PROGAR LLC**
Michael J. Progar (ARDC No. 6181280)
200 West Adams Street, Suite 2220
Chicago, IL 60606
Telephone: (312) 630-9630
Facsimile: (312) 630-9001
Email: mjp@doherty-progar.com

**FOX ROTHSCHILD LLP**
John J. Haggerty (*pro hac vice*)
Stephanie B. Fineman (*pro hac vice*)
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
Email: jhaggerty@foxrothschild.com
          sfineman@foxrothschild.com

Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: August 9, 2010*

*Attorneys for Defendant,
Joe Caputo and Sons – Algonquin, Inc.*