# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **KATHY ALIANO**, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 09 cv 0910 |
| **JOE CAPUTO AND SONS – ALGONQUIN, INC.**, an Illinois corporation, individually, and d/b/a JOE CAPUTO & SONS FRUIT MARKET; and DOES 1-10, | ) ) ) ) ) | Judge Leinenweber Magistrate Judge Mason |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Thomas A. Zimmerman, Jr. (IL #6231944)
Adam M. Tamburelli (IL #6292017)
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Counsel for the Plaintiff and Class

I.   INTRODUCTION.

   A.   FACTA Law.

In order to curb identity theft, Congress enacted the December 2003 Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), which provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g)

This provision is *not* ambiguous, and "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." *Pirian v. In-N-Out Burgers*, 2007 WL 1040864 at *3 (C.D.Cal. 2007). FACTA required full compliance with its provisions no later than December 4, 2006 – **three years** after the law was enacted – for all machines in use and for all transactions. 15 U.S.C. §1681c(g)(3)(A).

When a plaintiff can establish that the defendant "willfully" failed to comply with the FACTA requirements, then he or she can recover actual or statutory damages of not less than $100 and not more than $1,000. 15 U.S.C. § 1681n(a)(1)(A). Reckless conduct constitutes a "willful" violation of FACTA.

   B.   Case History.

It is undisputed[1] that on February 12, 2008, over one (1) year *after* FACTA's explicit compliance deadline, Plaintiff received from Defendant a computer-generated receipt which displayed the first six digits and last four digits of her credit card number. (Plaintiff's First Amended Complaint ("Compl."), Docket No. 64, ¶ 1; and Plaintiff's redacted receipt, Docket No. 92-1). Thus, Defendant

---

[1] To the extent Defendant still challenges Plaintiff's standing, as it has repeatedly done throughout this litigation with absolutely no evidence to support its challenge, after Defendant filed the instant motion, Plaintiff provided definitive evidence that the credit card she received from Defendant was hers. (See, *e.g.,* Docket No. 157). Accordingly, Defendant's frivolous argument should finally be put to rest.

violated FACTA by printing more than the last five digits of the card number.

After lengthy discovery revealed that Defendant issued customers 294,134[2] non-compliant receipts, Plaintiff moved to certify the class. (Docket No. 92). In opposing certification, Defendant raised many of the same arguments it sets forth in their current motion. (Docket No. 118). However, On September 21, 2010, the Court rejected Defendant's arguments and certified a Class consisting of:

> all persons to whom the Defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays more than the last five digits of the person's credit card or debit card number.

(September 21, 2010 Order, Docket No. 184; and Compl., Docket No. 64, ¶ 15).

### C. Defendant's Motion for Summary Judgment.

Defendant begins its motion *not* arguing that it did *not* violate FACTA, but rather, Defendant argues the Court should rule that Defendant is not liable for its admitted violations of FACTA because Plaintiff and her counsel are "boldly" holding Defendant accountable for its "approximately 300,000" violations of a valid federal law. (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Memo."), Docket No. 151, p. 1).

Defendant also opines that since the statutory penalty imposed by Congress for violating FACTA may result in Defendant facing significant liability, the law *itself* is unfair, rather than acknowledging the fact that Defendant's liability is only significant because Defendant admittedly violated the law "approximately 300,000" times. *Id*.

Notwithstanding Defendant's opinion that it should be able to pick and choose the laws to which it should be held accountable, FACTA was initially enacted to address a demonstrated method of identity theft, and two years after enacting FACTA Congress later passed the Clarification Act, 15 U.S.C. § 1681n(d), which clarified liability under FACTA. When passing the Clarification Act,

---

[2] Defendants admit that there are "approximately 300,000 plaintiffs. (Def. Memo., p. 1) The records produced by Defendant contain information verifying that there were 294,134 violations. Plaintiff has not attached these records because they contain confidential information; however, Plaintiff will tender these documents to the Court for an *in camera* review, should the Court require this.

Congress *again* recognized that one of FACTA's goals was to "prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Pub. L. No. 110-241, § 2(a)(1).

Therefore, as Congress has determined that FACTA is a valuable law addressing an important societal issue, and more importantly, that it remains a valid law, Defendant's irrelevant statements as to FACTA's virtues should be ignored.

Moving on from Defendant's desperate appeal for judicial nullification, the sole substantive basis for Defendant's motion is that its admitted violation of FACTA on over 294,134 customer receipts was not "willful," and therefore Defendant is not accountable for its violations. (Def. Memo., p. 1). In support of this argument, Defendant asserts three what it terms "key immutable and unassailable facts:" (1) Defendant did not know of FACTA or its truncation requirements; (2) Defendant did not know that its own computer software was violating FACTA, and it had no duty to ensure that it was not violating the law, and (3) even if Defendant had known that it was violating FACTA, there is nothing it could have done to stop its violation of the law. (Def. Memo., pp. 1-2).

However, each of those "key immutable and unassailable facts" is either irrelevant, demonstrably false, or contradicted by overwhelming evidence.

Natale Caputo ("Nat" or "Nat Caputo"), Defendant's owner and president, is a sophisticated businessman who is currently owner and/or president of three (3) grocery stores and has been in business since at least 1999. (Plaintiff's Local Rule 56.1 Statement of Additional Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment ("SOAF"), ¶¶ 1-2). Yet, Defendant argues that it is not responsible for its approximately 300,000 undisputed FACTA violations over a 17-month period because Nat Caputo was entitled to and did ignore repeated notifications of both FACTA's truncation requirements and notifications that Defendant was not in compliance with those requirements.

Defendant asks the Court to excuse Nat's deliberate ignorance of federal law, despite the fact that Nat had the responsibility as president and/or owner of multiple companies to ensure that his stores complied with a law that was particularly applicable to these businesses. After all, Nat's businesses process hundreds of thousands of credit and debit card transactions each year.

Taking Defendant's argument to its logical conclusion, no business will ever have to comply with any law penalizing willful conduct, as the owners and officers of every business can simply make a conscious effort to avoid any knowledge of applicable laws – even if these people are bombarded with that knowledge from outside sources.

That is simply an untenable conclusion. Indeed, under the relevant law, Defendant cannot successfully assert this "ostrich defense" to avoid its obligation to comply with the law.

## II. SUMMARY JUDGMENT STANDARD.

Summary judgment should only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). A genuine issue of fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Miller v. Am. Airlines, Inc.*, No. 03 C 7756, 2007 WL 489147, at *1 (N.D. Ill. Feb. 6. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To establish a genuine issue of fact, the non-moving party must present *some* evidence to that show there is a genuine issue of material fact for trial. *Miller*, 2007 WL 489147, at *2 (emphasis added).

In ruling on a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). The Court may not weigh the evidence or decide which testimony is more credible. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must "avoid[]

the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## III. SUMMARY OF THE ARGUMENT.

### A. The Relevant Issue to Be Decided By the Court.

Defendant began doing business on August 30, 2007. (Defendant's Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment ("SOF"), Docket No. 151-1, ¶ 8). At that time, Defendant was *not* in compliance with FACTA's five (5) digit truncation requirement, as Defendant printed the first six (6) and last four (4) digits of its customers' credit and debit card numbers on their receipts. (SOF, ¶ 22; SOAF, ¶ 30). Defendant finally became FACTA compliant in February, 2009. (SOF, ¶ 46).

Between August 30, 2007 and February, 2009, Defendant printed 294,134 receipts that violated FACTA's truncation requirements, including Plaintiff's receipt. (See, *e.g.,* Docket No. 94, p. 5).

Plaintiff and the Class are only seeking statutory damages for Defendant's violations of FACTA. (Docket No. 102). Accordingly, since 15 U.S.C. § 1681n(a)(1)(A) provides for statutory damages only if a defendant's violations are willful, the sole question to be decided in ruling on Defendant's motion is if the evidence produced in this case is sufficient to raise a question of fact as to whether Defendant's admitted FACTA violations were willful, i.e., knowing or reckless.[3] (Def. Memo., p. 2).

### B. The Overwhelming Evidence Demonstrates That Defendant Committed a "Willful" Violation of FACTA.

The evidence produced thus far in this case demonstrates that, at the very least, a question of fact remains as to whether Defendant's FACTA violations were knowing or reckless. For example, the

---

[3] The Supreme Court held that willfulness under the FCRA encompasses *both* knowing *and* reckless conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57 (2007). This standard is discussed more fully *infra*.

5

following is a summary of the evidence that demonstrates that Defendant knowingly or recklessly disregarded FACTA's requirements:

1. In **September, 2004**, shortly after FACTA was enacted, American Express Merchant Services ("American Express") mailed documents to Nat Caputo detailing FACTA by name and stating FACTA's specific legal requirements for truncation of credit card and debit card numbers, yet Nat chose to ignore those warnings. (SOAF, ¶¶ 6-8).

2. In **December, 2006**, Fifth Third Bank Processing Solutions ("Fifth Third") sent Defendant a publication issued by the PCI Security Standards Council that informed Defendant of the legal requirements and the necessity of truncation of credit card and debit card numbers, and Defendant's need to comply with those requirements. Defendant did nothing in response, and failed to comply with the stated requirements. (SOAF, ¶¶ 23-24; SOF, ¶ 52).

3. In **September, 2007**, Nat Caputo received a telephone call from his cousin-in-law, Robertino Presta ("Presta"), who was the president of another grocery store that was being sued for violating FACTA. During that call, Presta told Nat that Defendant was engaging in the same conduct that formed the basis of the lawsuit against Presta's company. Indeed, Presta mistakenly told Nat Caputo that Defendant was named in that lawsuit. During this call, Presta stated that the lawsuit has "something to do with your credit cards" and asked Nat "Are you doing anything illegal?" However, Nat Caputo never consulted with a lawyer, never investigated Presta's claims or the lawsuit, and never bothered to even check Defendant's receipts. (SOAF, ¶¶ 9-12).

4. In Defendant's Answers to Plaintiff's Interrogatories, Defendant's President, Nat Caputo admitted that he learned of FACTA's truncation requirements in **September, 2007** as a result of the lawsuit against Presta's company, but Defendant did nothing to attempt to comply with FACTA. (SOAF, ¶¶ 20-22).

5. In approximately **November or December, 2007**, Presta again called Nat and told Nat that Defendant was still engaging in the same conduct that formed the basis of the lawsuit against Presta's company, and that Defendant was still a defendant in that lawsuit During this second call, Presta said that Defendant was "still making mistakes" and "was showing five numbers." Nat was sitting next to his corporation counsel during this second telephone call. Yet, Nat again did not consult with a lawyer, investigate Presta's claims or the lawsuit, or bother to check Defendant's receipts. (SOAF, ¶¶ 13-19).

6. On **July 18, 2008**, Fifth Third mailed to Defendant a billing statement that contained specific information about FACTA and its truncation requirements, and advised Defendant to review its receipts and work with its legal counsel to ensure it was compliant with FACTA's requirements. (SOAF, ¶ 25). Defendant ignored this notification, and continued to violate the law.

Nat Caputo was bombarded with repeated warnings and notifications about FACTA and credit card truncation virtually every year for four (4) years. The foregoing evidence raises a genuine issue of fact that Defendant, at a minimum, recklessly disregarded FACTA's truncation requirements.

## IV. ARGUMENT.

### A. Standard for "Willfulness" Under the FCRA.

The willfulness requirement of § 1681n is defined to include *both* knowing *and* reckless conduct. *Safeco*, 551 U.S. at 57. In *Safeco,* the Supreme Court interpreted "recklessness" in keeping with the common law definition of action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. The standard is an objective one, constituting "something more than negligence but less than knowledge of the law's requirements." *Kubas v. Standard Parking Corp.,* 594 F.Supp.2d 1029, 1032 (N.D. Ill. 2009), quoting *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 726 (7th Cir. 2008).

Therefore, even if a defendant does not have specific knowledge of FACTA's requirements, its FACTA violation would still be "willful" if the defendant's actions are reckless. Because willfulness encompasses reckless conduct, this prevents a defendant from simply turning a blind eye to the law in an effort to avoid liability for a willful FACTA violation. See, *J.I. Case Credit Corp. v. First Nat. Bank of Madison Cty.,* 991 F.2d 1272, 1278 (7th Cir. 1993) ("To consciously ignore or to deliberately close one's eyes to a manifest danger is recklessness, a mental state that the law commonly substitutes for intent or actual knowledge"); *United States v. Illinois Central R. Co.,* 303 U.S. 239, 242-243 (1938) ("willfully," as used in a civil penalty provision, includes "conduct marked by careless disregard whether or not one has the right so to act") (internal quotation omitted).[4]

---

[4] "Willfulness" is interpreted identically in other civil statutes as well. See, e.g., *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129, 133 (1988) (the phrase "arising out of a willful violation" in the Fair Labor Standards Act applies where an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985) (damages provision under the ADEA, which applies "only in cases of willful violations," creates liability where an

7

Various courts that have addressed the issue have found that whether a FCRA violation is "willful" is a matter for the jury. *Searcy v. eFunds Corp.*, 2010 WL 3894165, *6 (N.D. Ill. 2010); citing *Whitfield v. Radian Guar.*, 501 F.3d 262, 270-271 (3rd Cir. 2007) (whether or not the defendant willfully violated FCRA is a factual issue), and *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1210 (C.D. Cal. 2007) (willfulness under FCRA is generally a question for the jury); see also, *Lenox v. Equifax Info. Serv. LLC*, 2007 WL 1406914, *6 (D. Or. 2007) (whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of FCRA is a question of fact.).

Judge Pallmeyer's decision in *Shurland v. Bacci Cafe & Pizzeria on Ogden Inc*., 259 F.R.D. 151 (N.D. Ill. 2009), is particularly instructive, and *Shurland* was factually similar to this case. The plaintiff in *Shurland* sought statutory damages on behalf of himself and a putative class for the defendant's alleged willful violations of FACTA. *Id*. at 154. After discovery, the defendant filed a motion for summary judgment, arguing that its conduct was not willful because the plaintiff could not produce definitive evidence proving that the defendant actually *received* notification of FACTA's requirements. *Id*. at 156.

The Court denied the defendant's motion for summary judgment, finding:

> Plaintiff has presented evidence in the form of deposition testimony and business records sufficient to support a reasonable inference that Defendant received notice of FACTA's truncation requirements both in its monthly billing statement and via telephone calls from National Translink employees. Defendant is correct that none of the employees deposed could specifically recall speaking to anyone at Bacci. But Mr. Tracy, Mr. Porch, and Mr. Carey explained in detail the methods they used to notify hundreds of National Translink's clients of the need to truncate credit card receipts, and their documentation and contemporaneous handwritten notes of this process support the <u>inference</u> that National Translink did in fact contact Bacci regarding the new truncation requirements. Based on these records and the deponents' corroborating testimony, a reasonable jury could conclude that Bacci received notice and either knowingly or recklessly disregarded it.

*Id*. at 157 (emphasis added).

---

employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA").

In this case, there is significantly much *more* evidence that Defendant received notice of FACTA's truncation requirements than the Court was presented with in *Shurland*. Based on the evidence in this case, a reasonable jury can easily conclude that Defendant either knowingly or recklessly disregard FACTA's truncation requirements, and Defendant's motion for summary judgment must be denied.

> B. **Defendant Repeatedly Received Notice of FACTA's Truncation Requirements and Either Knowingly or Recklessly Disregarded Them.**
>
>> 1. **American Express Sent Nat Caputo Documents Explicitly Notifying Him of FACTA's Existence and the Law's Specific Requirements.**

Nat Caputo, in addition to being owner and president of Defendant, is also the president of two other grocery stores: Joe Caputo & Sons – Palatine, Inc., and Joe Caputo & Sons, Inc. (SOAF, ¶¶ 1-2). Joe Caputo and Sons, Inc. has been an American Express merchant from November 15, 1999 to the present, and Nat Caputo is, and at all relevant times was, the authorized signer on the American Express account for Joe Caputo and Sons, Inc. (SOAF, ¶ 4). The address that American Express has on file for Joe Caputo and Sons, Inc. is 959 E. Oakton Street, Des Plaines, IL 60018. (SOAF, ¶ 5).

In **September 2004**, American Express sent a document to all of its merchants, including to Nat at Joe Caputo and Sons, Inc. to its Des Plaines address, which states as follows:

> Federal Legislation: truncating account numbers on receipts. On December 4, 2003, President Bush approved a federal law that preempts existing state laws requiring truncation of account numbers on customer receipts, thereby creating a uniform national standard. This legislation, called the **Fair and Accurate Credit Transaction Act of 2003 provides (among many other things) that "no person accepting credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number** or the expiration date upon any receipt provided to the cardholder at the point of sale or transactions.

(SOAF, ¶¶ 3, 5-8) (emphasis added).

The American Express document further stated that stated that "Equipment that is first put to use on or after January 1, 2005, must comply with this requirement…." (SOAF, ¶ 7). Defendant's credit card equipment was first put into use in August, 2007. (SOAF, ¶ 30).

The evidence demonstrates that Nat received this American Express notification four-and-a-half (4 1/2) years *before* Defendant finally brought its equipment into compliance with FACTA (after this lawsuit was filed). Similar to *Shurland*, here the evidence supports a reasonable inference that Nat was directly notified of FACTA's existence, name, and legal requirements from documents that American Express sent to Nat's place of business. *Shurland*, 259 F.R.D. at 157.

### 2. Defendant Received a Payment Card Industry Publication from Fifth Third Notifying Defendant of Legislation Regarding Truncation of Credit and Debit Card Numbers.

Defendant admits that in December 2006, Fifth Third sent Defendant a copy of the September 2006 Payment Card Industry Data Security Standard ("PCI-DSS"), and that Defendant reviewed it. (SOF, ¶ 54). The PCI-DSS states: "PCI DSS requirements are applicable if a Primary Account Number (PAN) is stored, processed, or transmitted…. Additionally, **other legislation (for example, related to customer personal data protection, privacy, identity theft, or data security) may require specific protection of this data**…. (SOAF, ¶ 23) (emphasis added).

The PCI-DSS also states that the requirement that the first six and last four digits of the PAN are the maximum number of digits to be displayed "**does not … supersede stricter requirements in place for displays of cardholder data (for example, for point of sale [POS] receipts)**." (SOAF, ¶ 24) (emphasis added). Contrary to Defendant's "undisputed" facts, the PCI-DSS *did* refer to truncation requirements, and indirectly, to FACTA. (Def. Memo., p. 4).

### 3. Nat Caputo Was Told About FACTA Twice in 2007, and Was Even Mistakenly Told That *Defendant* Was a Party to a FACTA Lawsuit.

In **September, 2007,** Nat Caputo received a telephone call from Presta, who owned a grocery store – Caputo's New Farm Produce, Inc. – that was being sued in the Caputos Produce Case for violating FACTA. (SOAF, ¶ 9). During that telephone call, Presta stated that the lawsuit had "something to do with your credit cards" and asked Nat "Are you doing anything illegal?" (SOAF, ¶ 10). Further, Presta mistakenly told Nat Caputo that *Defendant* was also being sued as a defendant in

the Caputos Produce Case. (SOAF, ¶ 11). However, after receiving the telephone call from Presta, Nat Caputo did not consult with an attorney, review the Complaint or any documents in the Caputos Produce Case, review any of Defendant's credit and debit card receipts, process a "test" credit card transaction at Defendant's store, or investigate whether Defendant was complying with all laws pertaining to credit card truncation. (SOAF, ¶ 12; SOF ¶ 73, 78).

A few months later, in **November-December, 2007,** Presta called Nat again and told him that *Defendant was still a party* in the Caputos Produce Case. (SOAF, ¶ 13). During that *second* telephone call, Presta also told Nat that Defendant was "still making mistakes" involving "credit cards" and "was showing five numbers." (SOAF, ¶ 14). Despite all of this, Nat did not consult with an attorney, inquire into the lawsuit in which Presta indicated that Defendant was a party defendant, review Defendant's credit and debit card receipts, process a "test" credit card transaction at Defendant's store, or investigate further whether Defendant was complying with all relevant laws related to credit card truncation. (SOAF, ¶¶ 16-18; SOF ¶ 73).

Indeed, when he received the *second* telephone call from Presta, Nat was in his car sitting next to Defendant's corporate counsel, Mike Alesia. (SOAF, ¶ 15; SOF ¶ 77). However, Nat never asked his corporate counsel if Defendant was breaking the law, Nat never asked him to research the issue or even *inquire* to check if Defendant was doing anything wrong. (SOAF, ¶¶ 12, 16) After all, Alesia was sitting right next to him while the second telephone call was taking place.

To stress Defendant's complete indifference to its violations of FACTA, even though Defendant was sued *in this lawsuit*, Nat has still not looked at one of Defendant's credit and debit card receipts. From the time of Presta's first telephone call to and including the date of his deposition on June 25, 2010, Nat Caputo never reviewed any of Defendant's credit card receipts or ran a "test" credit card transaction to investigate Presta's warnings. (SOAF, ¶ 19).

11

The fact that Nat Caputo deliberately ignored Presta's warnings and failed to conduct even a cursory investigation into Presta's warnings that Defendant was violating the law demonstrates that Defendant was recklessly disregarding FACTA. Defendant argues that it was not reckless because Nat consulted with Roger Larsen ("Larsen"), Defendant's technology "expert," after the first telephone call and was told that Defendant was *PCI Compliant.* This is unavailing, as Larsen is not an attorney, and Nat never consulted with an attorney despite the fact that Defendant had a regular corporate counsel. Defendant was repeatedly notified of FACTA's truncation requirements under the law. The least he should have done is ask his attorney whether he was complying with the law. Keep in mind, Plaintiff is *not* alleging in this case that Defendant violated any PCI standards.

Additionally, after Nat Caputo spoke to Larsen after the first Presta telephone call, Presta called Nat a second time and again told him that he was "still making mistakes" involving credit cards. But, Nat still did not consult with his counsel (who was sitting next to him) about either the lawsuit to which Defendant was purportedly a party, or about the law that Defendant was being accused of violating.

Finally, contrary to the impression Defendant seeks to convey to the Court, Larsen never told Nat that Defendant was *not* breaking any laws. Larsen simply informed Nat that Defendant was compliant with *PCI standards*. (SOAF, ¶ 34). Plaintiff a*grees* that Defendant was compliant of PCI standards. Larsen was not familiar with FACTA, and was under no contractual obligation to ensure that Defendant was compliant with any laws. (SOAF, ¶¶ 32-33). Therefore, whether Defendant was reckless in relying upon Larsen for all legal matters is a question of material fact for the jury.

### 4. Defendant Admitted that it Knew of FACTA's Requirements in 2007.

Defendant admitted that it had *actual knowledge* of FACTA's requirements in 2007. (SOAF, ¶ 20). Specifically, Interrogatory No. 10 asked: "State how and when you first learned of truncation requirements" and Defendant's answer to Plaintiff's Interrogatory No. 10 stated:

> On information and belief, Joe Caputo and Sons – Algonquin, Inc. **first learned of truncation requirements in September 2007** as a result of a lawsuit styled *Aliano v. Caputos New Farm Produce Inc.*, No. 07 cv 03914, filed on July 11, 2007 in the United States District Court for the Northern District of Illinois, Eastern Division.

(SOAF, ¶ 21).

The case that Defendant identified which brought "truncation requirements" to Defendant's attention – *Aliano v. Caputos New Farm Produce Inc.* – was a FACTA case ("Caputo's Produce Case") (SOAF,¶ 9, SOF, ¶ 71; Def. Memo., Ex. 19, Docket No. 151-21). Indeed, the first paragraph of the Complaint in the Caputo's Produce Case identifies it as a FACTA case, and the second paragraph directly quotes the specific language of FACTA that refers to the truncation requirements. (Def. Memo., Ex. 19, Docket No. 151-21, ¶¶ 1-2).

In an attempt to circumvent Defendant's clear admission that it had actual knowledge of FACTA's truncation requirements in 2007, Defendant asks the Court to ignore what it stated in its verified Interrogatories, and instead believe that Nat Caputo understood Interrogatory 10 to be asking when Defendant first heard of "compliance." (Def. Memo., p. 13). This story is not plausible. Defendant clearly stated that it became aware of "**truncation requirements**" in 2007, and the word "compliance" is nowhere in the Interrogatory or Defendant's answer thereto. (SOAF, ¶¶ 20-22).

Defendant was represented by counsel at the time, and answered Interrogatory No. 10 with the specific phrase "truncation requirements" in the context of responding to interrogatories in a FACTA lawsuit. Defendant's eleventh-hour fable contradicts its earlier admission. At a minimum, this is for a jury to decide.

> **5. Defendant Received a Billing Statement in July, 2008, Notifying It of FACTA's Truncation Requirements, But Defendant Ignored That Statement.**

At all relevant times, Fifth Third Bank Processing Solutions ("Fifth Third") was Defendant's credit card processer. (SOF, ¶ 53). On July 18, 2008, Fifth Third mailed Defendant a Merchant Billing Statement that states as follows:

13

> **Current laws prohibit printing the expiration date or more than the last four digits of a card number on either the merchant's receipt or the cardholder's receipt which may result in statutory fines or penalties.** *Please review the receipts* you provide to your customers for compliance *and work with your legal counsel* to ensure your business is in compliance with all federal, state, and local laws and regulations that apply to your acceptance of cards or that otherwise govern your business.

(SOAF, ¶ 25; SOF, ¶ 65).

As set forth above, Defendant never checked its receipts and never consulted with counsel, in complete disregard of the Fifth Third directive in the July 18, 2008 Billing Statement. Defendant *admits* receiving the July 18, 2008 statement from Fifth Third. (SOF, ¶ 65). This evidence *alone* is sufficient to support a reasonable inference that Defendant received notice of FACTA's truncation requirements. Indeed, in *Shurland*, the Court found that the defendant's receipt of notice of FACTA's truncation requirements in its monthly billing statement was sufficient evidence of "willfulness" to withstand summary judgment. 259 F.R.D. at 157.

### 6. Defendant Recklessly Ignored the Notifications from Fifth Third.

Although Defendant admits to receiving the PCI-DSS from Fifth Third, it dismisses the effect of the notification in the July, 2008 Fifth Third billing statement, because Defendant would simply throw the statements in a box and send the statements to its accountant *unopened*. (SOAF, ¶ 27; Def. Memo., p. 5). Defendant would still not look at the statements after its accountant sent them back with the bank statement and reconciliation. (SOAF, ¶ 28).

First, that Defendant even made this argument underscores how Defendant's main defense to this action is the unwarranted belief that it can escape liability for violating laws simply by going to great lengths (including not even opening its mail) in an attempt to avoid gaining knowledge of relevant laws.

That aside, Nat admitted that the <u>only</u> purpose of sending the Fifth Third statements to Defendant's accountant was so that the accountant could total up the numbers with Defendant's bank statements, and make sure they all match with Defendant's bank statements. (SOAF, ¶ 26). By

14

Defendant's own admission, the accountant was *not* responsible for ensuring that Defendant was in compliance with any laws (SOAF, ¶ 26), and Nat Caputo admitted that if there is important information in the Fifth Third Merchant Billing Statements that his company needs to know about, then he will miss it because he never reviews the statements. (SOAF, ¶ 29).

Thus, there is a genuine issue of material fact as to whether Defendant's failure to open the monthly statements from Defendant's credit card processer prior to sending them to its accountant, or even review them at any time after they were sent back to Defendant, constitutes a reckless disregard for FACTA's transaction requirements that were set forth and warned about in those statements.

    C.    **Defendant's Argument That it Could Not Have Complied with FACTA Even if it Had Known About it Should Be Summarily Rejected.**

Defendant devotes a significant portion of its argument to the facially-absurd premise that Defendant's conduct was not willful because the credit and debit card processing software ("Software") that Defendant used was proprietary, and Defendant could not alter it to conform with FACTA. (Def. Memo., pp. 6-8).

Suspiciously absent from Defendant's argument is an explanation as to why Defendant could not:

    (a)    use different software that was FACTA compliant, as many other businesses did,

    (b)    use credit and debit card imprint machines, which are *not* subject to FACTA, such as the hand swipe machines (15 U.S.C. § 1681c(g)(2)),

    (c)    stop accepting credit or debit cards until a new system was installed.

Indeed, in order to lend any credence to Defendant's argument, the Court would have to assume as true that Defendant was *obligated* to use the non-compliant LOC software in its stores, and that Defendant was *obligated* to accept debit and credit cards. Obviously, neither such obligation existed. Defendant could have easily immediately ceased violating FACTA by one of the three options set forth above.

Notably, the evidence demonstrates that even when Defendant had the opportunity to upgrade the Software to become FACTA compliant, Defendant consciously chose to delay doing so. Indeed, an update to Defendant's Software that would have brought Defendant into *compliance* with FACTA was available and ready for installation in November, 2008. (SOAF, ¶ 31; SOF, ¶¶ 35-36).

However, Nat decided to wait until January, 2009 to begin the upgrade process, because if he started the upgrade process in November, it would have disrupted Defendant's business during the busy holiday season. (SOAF, ¶ 35; SOF, ¶¶ 38-43). Defendant intentionally disregarded its non-compliance with FACTA and continued to print receipts in violation of the law, solely because Defendant did not want to be inconvenienced during the holiday season. This further demonstrates Defendant's failure to make *any* serious attempts to comply with the law.

As is a common theme throughout its motion, Defendant attempts to shift the blame entirely to Larsen, stating that Defendant relied on Larsen for everything (including legal advice) relating to the credit and debit card processing systems. (Def. Memo., pp. 10-11). However, as set forth above, Larsen was not an attorney, Larson never told Nat that Defendant was *not* breaking any laws, and Larsen also testified that he was *not* obligated to ensure that Defendant was in compliance with all laws. (SOAF, ¶ 34).

Defendant's reliance on Larsen was reckless, Larsen testified that *Defendant* was ultimately responsible for ensuring that its system was compliant with the law. (SOAF, ¶ 32). Defendant would not be justified in relying on Larson's advice relative to PCI legal compliance, much less legal compliance with FACTA.

There exists a question of material fact as to whether Defendant's total and complete reliance on Larsen for legal advice was reckless, especially in the face of Nat's repeated notice of the existence of FACTA's truncation requirements and warnings that Defendant was violating the law. Defendant's motion for summary judgment must therefore be denied.

Wherefore, Plaintiff Kathy Aliano, individually, and on behalf of all others similarly situated, prays that the Court enter an order <u>denying</u> Defendant's motion for summary judgment, and for such other relief as this court may deem appropriate.

        Plaintiff KATHY ALIANO, individually, and on behalf of all others similarly situated,

        By: <u>s/Thomas A. Zimmerman, Jr.</u>
        Thomas A. Zimmerman, Jr. (IL #6231944)
        Adam M. Tamburelli (IL #6292017)
        ZIMMERMAN LAW OFFICES, P.C.
        77 West Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020 telephone
        (312) 440-4180 facsimile
        www.attorneyzim.com

Counsel for the Plaintiff and the Class

## **CERTIFICATE OF SERVICE**

Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he caused the above and foregoing document to be served upon counsel of record in this case via the U.S. District Court CM/ECF System, prior to 11:59 p.m., on this day February 24, 2011.

<u>s/Thomas A. Zimmerman, Jr.</u>