**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KATHY ALIANO

          Plaintiff,

v.

JOE CAPUTO & SONS – ALGONQUIN,
INC., An Illinois Corporation, individually and
d/b/a JOE CAPUTO & SONS FRUIT
MARKET; and DOES 1-10,

          Defendants.

CIVIL ACTION No. 09-CV-0910

Hon. Harry D. Leinenweber
Magistrate Judge Mason

---

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANT JOE CAPUTO & SONS – ALGONQUIN, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

---

**DOHERTY & PROGAR LLC**
Michael T. Sprengnether (ARDC No. 2694263)
Michael J. Progar (ARDC No. 6181280)
200 West Adams Street, Suite 2220
Chicago, IL 60606
Telephone: (312) 630-9630
Facsimile: (312) 630-9001
Email:  mts@doherty-progar.com
        mjp@doherty-progar.com

**FOX ROTHSCHILD LLP**
John J. Haggerty (*pro hac vice*)
Stephanie B. Fineman (*pro hac vice*)
2700 Kelly Road, Suite 300
Warrington, PA  18976-3624
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
Email: jhaggerty@foxrothschild.com
        sfineman@foxrothschild.com

Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Attorneys for Defendant Joe Caputo and Sons – Algonquin, Inc.*

## INTRODUCTION AND SUMMARY OF ARGUMENT

Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Yet, as detailed in Joe Caputo & Sons – Algonquin, Inc.'s ("Caputo") contemporaneously-filed Reply in support of its Statement of Undisputed Material Facts ("MF") and in its Response to Plaintiff's Statement of Additional Facts ("SOAF"), Plaintiff Kathy Aliano has failed to shut up or to put up any competent, reliable admissible evidence to contradict the following three immutable, unassailable facts:

• Before this lawsuit, Caputo did not know of FACTA or its truncation requirements.

• Before this lawsuit, Caputo did not know the proprietary software manufactured by LOC Software ("LOC") and selected and installed by the independent, outside professional, Integrated Store Systems, Inc. ("ISSI") caused receipts to be printed in a way that violated the law.

• Even if it had been aware that the proprietary software was flawed (which it was not), Caputo had no control over the software and what it does. No one at Caputo had the ability (or legal right) to modify the proprietary software so as to truncate any more debit and/or credit card numbers off the receipts. The software manufacturer did not provide ISSI or Caputo with the source code. It is undisputed that, to change the programming of the software so that the credit/debit card number on receipts print with five or less numbers, Caputo had to get a specific release (upgrade) of the software from the manufacturer. It is also undisputed that the software manufacturer's upgrade was not ready for installation at Caputo's until November 2008.

Plaintiff's argument hinges on three documents and two phone calls, none of which sufficiently create a genuine issue for trial. Caputo does not dispute two of the documents were mailed. However, the uncontroverted evidence establishes Caputo did not review them before

1

this lawsuit was filed. The third document, which Caputo did receive and review, does not

mention FACTA or its truncation requirements and, significantly, provides that the first six and

last four digits may be shown. Likewise, the uncontroverted evidence establishes Mr. Caputo's

cousin-in-law, Robertino Presta, never mentioned FACTA or the word truncation in either of his

two calls and, immediately after each call, based on ISSI's assurances, Caputo understood it was

compliant, legal and not breaking any laws. Even accepting as true all of Plaintiff's SOAF

(except 15, 16, 20 and 34) solely for purposes of this motion, Plaintiff's evidence fails to create a

material factual dispute as to willfulness. Accordingly, Caputo's Motion should be granted.

## ARGUMENT

## I. NONE OF THE DOCUMENTS RELIED ON BY PLAINTIFF CREATES A GENUINE ISSUE OF MATERIAL FACT AS TO WILLFULNESS

### A. PLAINTIFF HAS FAILED TO ESTABLISH CAPUTO RECEIVED AND REVIEWED THE SEPTEMBER 2004 AMERICAN EXPRESS FORM LETTER

Plaintiff first argues that, in or about September 2004, American Express mailed a form

letter to all merchants that were not on its exclusion list, advising of FACTA and its truncation

requirements. Pl. Mem. at 9; SOAF ¶¶3, 5, 8. Caputo does not dispute American Express

mailed this form letter. *See* Plaintiff's Tab 4, Affidavit of David Elliott ("Elliot Aff.").

However, **Plaintiff has not and cannot establish Caputo received and reviewed this 2004**

**form letter because it was mailed two years before Caputo was incorporated and three**

**years before Caputo opened for business to the public**. *See* SOAF ¶2 (Caputo was

incorporated in 2006); MF 5, 8.

Realizing this, Plaintiff argues instead that, because American Express mailed this form

letter to another entity, Joe Caputo & Sons, Inc., and because Natale Caputo is a principal of this

separate entity, Mr. Caputo purportedly received and reviewed this document. Yet, Plaintiff has

2

no evidence to support this assertion. In fact, American Express declined to sign the affidavit

Plaintiff's counsel initially prepared, in which Plaintiff sought to have American Express'

corporate designee, David Elliott, attest the September 2004 form letter was sent in the normal

course of business to Mr. Caputo at Joe Caputo & Sons, Inc. and was not returned. *Compare*

Plaintiff's proposed draft affidavit ¶¶12 and 18 (attached as Exhibit 24) *with* Exhibit 25 (final

affidavit). Rather, Mr. Elliot attested only that the September 2004 form letter was mailed to

merchants not on its exclusion list and Joe Caputo & Sons, Inc. was not on the exclusion list.

*See* Exhibit 25 at ¶10.

More importantly, even assuming *arguendo* it was received, the record evidence

establishes Caputo never reviewed it:

> Q.     What is the policy at your company concerning the receipt of these Fifth
> Third processing monthly statements? What happens when it comes to your
> mailbox?
> A.     All docs, bank statements, all go to the accountant.
> Q.     So they don't even open the envelope. They just stick it in a box and ship
> it off to the accountant?
> A.     Yes.
> Q.     If Visa and Mastercard or Discover or American Express sent you
> statements or notices, would those go in the box as well with the Fifth Third
> statements?
> A.     Yes.

*See* Ex. 10, N. Caputo Dep., at 22:8-23; 23:13-16; 81:12-18. In the face of the uncontroverted

testimony that such materials were sent unopened to the outside, independent account, this

document cannot serve as a basis on which to deny Caputo's summary judgment motion.

**B.     THERE IS NO EVIDENCE CAPUTO REVIEWED THE JULY 2008
FIFTHTHIRD BANK BILLING STATEMENT WHICH REFERENCED FACTA**

For the same reasons, Plaintiff's reliance on the billing statement from FifthThird dated

July 18, 2008 is misplaced. It is undisputed that, in this billing statement, FifthThird, for the first

and only time, referenced FACTA and its truncation requirements. *See* Ex. 17; MF 60-65.

3

Again, Caputo does not dispute that FifthThird Bank mailed this billing statement. However, the uncontroverted evidence establishes Caputo did not open or review this or any other billing statement from FifthThird. (MF66; N. Caputo Dep., 22:8-23; 23:13-16; 81:12-18). As noted, it was Caputo's policy and practice to place the unopened FifthThird monthly billing statements in a box and send them (still unopened) to the outside, independent account. It is undisputed that the accountant never informed Caputo there was any information in the July 2008 statement concerning FACTA or truncation requirements. (MF66; MF67). This document, therefore, cannot serve as a basis for denying Caputo's motion.

## C. THE SEPTEMBER 2006 PCI-DSS DID NOT PUT CAPUTO ON NOTICE OF FACTA OR ITS TRUNCATION REQUIREMENTS

The final document on which Plaintiff relies – the September 2006 Payment Card Industry Data Security Standard ("PCI-DSS") Version 1.1 – is equally unavailing and does not create a genuine issue of material fact as to Caputo's alleged willfulness. Caputo does not dispute it received in December 2006 a copy of the September 2006 PCI-DSS. *See* MF 54. Nor does Caputo dispute it reviewed the September 2006 PCI-DSS sometime thereafter. However, as is obvious from a review of the document, the September 2006 PCI-DSS does not refer specifically to FACTA or its truncation requirements or to any other law prohibiting printing the expiration date or more than the last four digits of a credit card number. *See* Ex. 16; *see also* MF55). Moreover, **Requirement 3 of the September 2006 PCI-DSS provides, in part, ". . . the first six and last four digits of a Primary Account Number may be stored, processed or transmitted.**" Ex. 16, PCI-DSS (emphasis added). ISSI's President, Roger Larsen, testified he saw the September 2006 PCI-DSS "when it came out" and that his understanding of Requirement 3 is that the first six and last four digits could be displayed on receipts: **" To my understanding, as of 2006, we can print – where did it go here – we can print the first six . .**

4

**. The document says that you can't print more than the first six and last four digits of the –
you can't display them."** (Ex. 9, Larsen Dep., 120:20-22) (emphasis added). This is precisely
the format dictated by the software ISSI selected and installed. There is no evidence to support
Plaintiff's contention that the September 2006 PCI-DSS put Caputo on notice of FACTA or its
truncation requirements or that it was a violation of FACTA to print the first six digits and last
four digits of a consumer's credit/debit card number. This document cannot serve as a basis for
denying Caputo's motion.

## II.  NONE OF THE CALLS WITH ROBERTINO PRESTA CREATE AN ISSUE OF MATERIAL FACT AS TO CAPUTO'S ALLEGED WILLFULNESS

Lastly, Plaintiff claims two phone calls between Natale Caputo and Robertino Presta
establish Caputo knew the software ISSI selected and installed was not compliant with FACTA
or its truncation requirement. This is not accurate. See MF71-79. The evidence shows that,
sometime in September 2007,[1] Mr. Presta called Natale Caputo and advised Mr. Caputo that
Plaintiff had sued Mr. Presta's company for allegedly not being "compliant." (MF74). During
this first call, Mr. Presta indicated the lawsuit filed against his company had something to do
with credit cards and asked Natale Caputo whether he was doing anything wrong. Mr. Presta did
not mention FACTA, "truncation" or "truncation requirements." He did not explain why his
company was being sued. He did not mention anything about receipts or anything about the
number of digits on credit/debit card receipts. (MF74-75; Declaration of Robertino Presta; Ex.
10, N. Caputo Dep., 32:11-21). Several months later, Mr. Caputo received another telephone

---

[1]  Although Mr. Caputo previously indicated this first call occurred in September 2007, during his deposition, Mr.
Caputo explained this had been a guess and he really did not know when Mr. Presta first called him. Ex. 9, Caputo
Dep., 27:17-28:16, 29:20-30:12. In July 2010, Plaintiff subpoenaed Mr. Caputo's phone records and call logs.
Despite having such documents for seven months before responding to summary judgment, Plaintiff has not
presented evidence establishing the actual time-frames of these calls. Nonetheless, for purposes of this Motion,
Caputo assumes Mr. Presta's calls took place in September 2007 and December 2007.

5

call from Mr. Presta who advised that there was still "something wrong" and mentioned five

numbers, but was not specific as to what he meant by that. Again, Mr. Presta did not mention

FACTA, "truncation," or "truncation requirements." (MF77). It was as a result of these calls

from Mr. Presta that Caputo first became aware of possible compliance issues.[2]

Plaintiff argues that, in response to these two calls, Caputo did nothing and must thus be

considered to have consciously ignored its legal obligations. *See* Pl. Mem. at 10-11. The

uncontroverted evidence establishes, however, that Caputo immediately contacted ISSI's

President, Roger Larsen, (Ex. 10, N. Caputo Dep., at 35:1-3), who was "the professional that

[Caputo] hired to make sure [its] IT was all in working orders [sic] and [Caputo's was] following

everything to the letter of the law." (Ex. 10, N. Caputo Dep., 26:3-7).

> Q. And so what did you say to Larsen again after the first call from Robertino?
> A. Are we breaking any laws with our credit cards?
> Q. What did he tell you?
> A. No. You're legal. Are you being sued? No. Don't worry about it. That was the extent of it, the first time.

Ex. 10, N. Caputo Dep., 35:13-24. After the second call from Mr. Presta, Natale Caputo

immediately called Roger Larsen in the presence of attorney Michael Alesia and specifically

asked Mr. Larsen about "five numbers." Mr. Larsen again assured Caputo it was compliant:

> Q. And then I believe you said several months later Robertino called you again?
> A. Correct.
> Q. And what did he say about five numbers?
> A. . . . You're still making the same mistakes. And I said, what am I doing wrong? He said, you're showing five numbers. I said really. He goes, yeah. That's what they are telling me I did wrong. Okay. That's all I do. Turned around and called Roger, explained to him. What's going on with five numbers? Are we doing anything wrong? He says no, you're fine. And I

---

[2] Because Caputo never heard of "truncation" or "truncation requirement" before this lawsuit, (Ex. 20, 6/2/10 N. Caputo Decl., at ¶7; Ex. 21, 8/6/10 N. Caputo Decl., at ¶¶15-17; Ex. 22, V. Caputo Decl., at ¶9), in responding to Plaintiff's Interrogatory No. 10, Caputo understood Plaintiff to be asking when it first became aware of compliance (Ex. 20, 6/2/10 N. Caputo Decl.) and responded to Interrogatory No. 10 by referencing the NFP Case Caputo learned of from the calls from Mr. Presta.

DTI 914204v3 04/01/11

> looked at Mike Alesia [who] was in the car with me at that time and I said, we're not breaking any laws. Roger Larsen told me no.
>
> Q.   Did you have this discussion with Mike Alesia in the car at the time?
>
> A.   Conversation, he was listening when I was speaking to Roger and I asked him if I was breaking any laws. He told me no.
>
> Q.   Who did, Alesia?
>
> A.   No, Roger Larsen told me no. . . .
>
> . . .
>
> A.   I just happened to tell Roger Larsen, am I breaking any laws? And Michael was listening to me ask that question, and Roger said no. I said okay, and I hung up.

Ex. 10, N. Caputo Dep., at 35:13-37:14. Mr. Larsen confirmed he specifically used the word "compliant." (Ex. 9, Larsen Dep., at 134:18-21).

Plaintiff ignores this evidence and, without citing any case law, argues Caputo must be considered reckless because Caputo was required to but did not consult an attorney, review the complaint in the separate lawsuit against Mr. Presta's company, review its credit/debit card receipts, or process a "test" credit card transaction. These arguments are red herrings because they are based on an unsupported assumption that Caputo had an affirmative obligation under FACTA (or otherwise) to do so and because they assume facts not in evidence.

There is no evidence to support Plaintiff's contention that "Caputo did not consult with an attorney." Plaintiff never asked Mr. Caputo about this. Further, any legal advice Caputo may have sought or received is protected by privilege – a fact confirmed by this Court when it denied Plaintiff's recent motion seeking to invade the attorney-client privilege on this very issue. In any event, this assertion does not create an issue of fact as to Caputo's alleged willfulness.

Equally meritless is Plaintiff's suggestion that Mr. Caputo was obligated to review the complaint she filed in *Aliano v. Caputo's New Farm Produce* (the "NFP Case") and that his failure to do so establishes a fact issue as to recklessness. This is absurd. Caputo was not named as a defendant in the NFP case. Plaintiff's counsel in the NFP Case, Thomas A. Zimmerman,

7

never served Caputo with the NFP Case Complaint. In fact, Mr. Caputo first saw a copy at his June 2010 deposition in this case. (Ex. 10, N. Caputo Dep., 135:15-136:8).

As for reviewing Defendant's credit card receipts, in making this argument, Plaintiff incorrectly suggests Caputo's copies of the transaction receipts would have revealed a compliance issue. Yet, as Plaintiff is aware, the undisputed evidence is that the store's transaction receipts – as distinct from the receipts provided to its customers – do not have digits on them. (Ex. 10, N. Caputo Dep., 137:9-11).

It is also undisputed that Caputo did not retain copies of the receipts provided to its customers. (Ex. 10, N. Caputo Dep., at 129:17-23). Plaintiff therefore contends Caputo was obligated to process a "test" credit card transaction. Mr. Caputo testified he did not personally run a transaction on his own credit card for a dollar to see what the receipt looked like because he never thought of doing that and because he "trusted the professional," Roger Larsen, who "always did the test runs on [Caputo's] machines." (Ex. 10, N. Caputo Dep., at 138:21-139:8). Even if Mr. Caputo had done so, such "test" transaction would not have alerted Caputo to FACTA's truncation requirements. Rather, at best, it would have shown Mr. Caputo only that the first six and last four digits of a credit card number were printed on the receipt. But, as noted, this is consistent with Requirement 3 of the September 2006 PCI-DSS. Moreover, as noted, in response to both of Mr. Presta's calls, Mr. Caputo specifically asked Roger Larsen, "are we doing anything wrong with our credit cards," (Ex. 10, N. Caputo Dep., 26:26:7-8), and "are we breaking any laws with our credit cards." (*Id.* at 35:18-19). Mr. Caputo testified that Mr. Larsen advised Caputo "You're legal," (*id.* at 35:21-22), "You're doing everything fine. You're doing everything correct," (*id.* at 26:8-10) and that Mr. Larsen represented Caputo was "not

8

DTI 914204v3 04/01/11

breaking any laws." (*Id.* at 29:18-19). Plaintiff has not established a genuine issue for trial as to these phone calls in which no one ever mentioned FACTA or truncation.

## III. PLAINTIFF'S EVIDENCE IS NOT SUFFICIENT TO RAISE A QUESTION OF FACT FOR TRIAL AS TO CAPUTO'S ALLEGED WILLFULNESS

Plaintiff acknowledges "[t]he sole question to be decided in ruling on Defendant's motion is if the evidence produced in this case is sufficient to raise a question of fact as to whether Defendant's admitted FACTA violations were willful, i.e. knowing or reckless." Pl. Mem. at 5. Plaintiff concedes that to survive summary judgment, she must present evidence Caputo (a) had actual knowledge of FACTA and its truncation requirements, or (b) consciously ignored or deliberately turned a blind eye to the law in an effort to avoid liability for a willful FACTA violation. Pl. Mem. at 7 (citation omitted). There is no such evidence.

### A. PLAINTIFF HAS FAILED TO PRESENT EVIDENCE CREATING A GENUINE ISSUE THAT CAPUTO "KNOWINGLY" VIOLATED FACTA

As noted in Caputo's initial brief, willful noncompliance requires a knowing and intentional commission of an act that Caputo knew violated FACTA. *See, e.g., Phillips v. Grendahl*, 312 F.3d 357 (8th Cir. 2002); *accord In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (stating, "willful means deliberate or intentional … in conscious disregard of one's duties or without just cause or excuse."). Here, for reasons addressed in Sections I and II above, Plaintiff has failed to produce any evidence Caputo had actual knowledge of FACTA or its truncation requirements before this lawsuit was filed. The September 2006 PCI-DSS confirms Caputo did not willfully violate FACTA – as it is the only document Caputo received and reviewed before this lawsuit was filed which referenced the format in which digits may be shown for credit card transactions – the first six and last four. The fact that the September 2006 PCI-DSS makes an oblique reference that there "may" be "other legislation" regarding protection of

9

account-holder information is not sufficient to create a genuine issue for trial as to willfulness. Caputo is entitled to judgment as a matter of law that it did not knowingly violate FACTA.

## B. PLAINTIFF FAILED TO PRESENT EVIDENCE CREATING A GENUINE ISSUE THAT CAPUTO "RECKLESSLY" VIOLATED FACTA

Relying on Judge Pallmeyers decision in *Shurland v. Bacci Café Pizzeria on Ogden, Inc.*, 259 F.R.D. 151 (N.D. Ill. 2009), Plaintiff contends her evidence (three documents and two phone calls) creates enough of an inference for a reasonable jury to conclude Caputo recklessly disregarded FACTA in an effort to avoid liability under FACTA. However, there is a critical distinction between *Shurland* which Plaintiff conveniently ignores. In *Shurland*, there was a factual dispute as to whether Defendant received notice of FACTA's truncation requirements. *Id.* at 155-56. The *Shurland* Court determined this dispute was sufficient to create a genuine issue for trial. *Id.* at 157. Unlike *Shurland*, in this case there is no dispute as to whether the documents were received. The uncontroverted evidence is that no one at Caputo ever reviewed either of the only two documents in this case that specifically refer to FACTA - the 2004 American Express form letter or the July 2008 FifthThird billing statement. When Caputo first became aware of a possible issue with "showing five numbers" (because of the second phone call from Mr. Presta which Caputo assumes *arguendo* took place in December 2007), Caputo promptly called ISSI which assured Caputo again it was not doing anything wrong and was "compliant." Thus, unlike *Shurland*, here there is no basis on which a reasonable jury could determine Caputo had actual notice of FACTA and recklessly disregarded it in an effort to avoid FACTA liability from August 2007 through January 2009.

Recklessness under the FCRA requires "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 127 S.Ct. at 2215 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836 (1994)). An "'actor's conduct is [] reckless . . . if

10

he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of [ ] to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Safeco,* 127 S.Ct. at 2215 (quoting RESTATEMENT (SECOND) OF TORTS § 500, p. 587 (1963-1964)) (emphasis added). A company does not act in reckless disregard unless there is a showing that the company ran a risk of violating the law substantially greater than the risk associated with merely acting carelessly. *Safeco,* 127 S.Ct. at 2215 (emphasis added). Here, giving Plaintiff the benefit of every possible inference, the evidence establishes only that Caputo acted carelessly or negligently.

Caputo retained an independent, third party professional whose very business is selling, installing and maintaining the type of software needed to print out credit/debit card receipts and the particular software that controls the credit/debit card numbers printed on customer receipts. MF 11-12. ISSI was responsible for selecting, installing, maintaining and upgrading the computer equipment and software. ISSI did not give Caputo any other options. MF 21; MF 18.

Caputo did not have the source codes, legal right or ability to modify the software. It is undisputed that, to change the software so that it no longer printed more than the last four digits on consumers' receipts, the manufacturer needed to provide a specific software upgrade which was not available until shortly before Thanksgiving 2008. MF38. When Caputo asked ISSI if there was anything important it needed to know about the upgrade and whether the upgrade could wait, ISSI said that it could wait. MF 43-44. ISSI never told Caputo that the purpose of the upgrade was to bring the software into compliance or that delay may expose Caputo's customers to potential harm or subject Caputo to potential liability. MF 44-45. Based on all the

11

DTI 914204v3 04/01/11

evidence, no reasonable jury could find that, between August 2007 and November 2008,[3]

Caputo acted "knowing ... of facts" that it was violating FACTA. Moreover, the evidence

demonstrates Caputo did not have reason to know its use of the software selected by ISSI created

an unreasonable risk of harm to its customers and that such risk was substantially greater than

that which was necessary to make its conduct negligent. In short, other than the fact that a

violation occurred, there is no factual basis upon which a jury could reasonably infer any

violation was reckless. Caputo is thus entitled to summary judgment.

Respectfully submitted,

/s Allison L. Kashon

**DOHERTY & PROGAR LLC**
Michael T. Sprengnether (ARDC No. 2694263)
Michael J. Progar (ARDC No. 6181280)
200 West Adams Street, Suite 2220
Chicago, IL 60606
Telephone: (312) 630-9630
Facsimile: (312) 630-9001
Email: mts@doherty-progar.com
   mjp@doherty-progar.com

**FOX ROTHSCHILD LLP**
John J. Haggerty (*pro hac vice*)
Stephanie B. Fineman (*pro hac vice*)
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
Email: jhaggerty@foxrothschild.com
   sfineman@foxrothschild.com

Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: April 1, 2011*

*Attorneys for Defendant*
*Joe Caputo & Sons – Algonquin, Inc.*

---

[3] December 2007 is the earliest possible date on which Caputo may arguably be said to have had notice of a compliance issue – though, again, not of FACTA itself because Mr. Presta admittedly never used the words "FACTA," "truncation" or "truncation requirement." At the very least, Caputo is entitled to judgment as a matter of law that it did not knowingly or recklessly violate FACTA from August 2007 through December 2007.

12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KATHY ALIANO<br><br>    Plaintiff,<br><br>    v.<br><br>JOE CAPUTO & SONS -- ALGONQUIN,<br>INC., An Illinois Corporation, individually and<br>d/b/a JOE CAPUTO & SONS FRUIT<br>MARKET; and DOES 1-10,<br><br>    Defendants. | CIVIL ACTION No. 09-CV-0910<br>Hon. Harry D. Leinenweber<br>Magistrate Judge Mason<br><br>**CERTIFICATE OF SERVICE OF DEFENDANT**<br>**JOE CAPUTO & SONS – ALGONQUIN, INC.'S**<br>**MOTION FOR SUMMARY JUDGMENT** |

I hereby certify that, on this date, I caused a true and correct copy of the foregoing *Reply Memorandum In Further Support Of Defendant Joe Caputo & Sons – Algonquin, Inc.'s Motion For Summary Judgment*, to be served on the following by electronic means through the court's transmission system:

Thomas A. Zimmerman, Jr., Esquire
Adam M. Tamburelli, Esquire,
ZIMMERMAN LAW OFFICES, P.C.,
77 West Washington Street, Suite 1220
Chicago, IL 60602
*Attorneys for Plaintiff, Kathy Aliano.*

/s Allison L. Kashon
**FOX ROTHSCHILD LLP**
Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: April 1, 2011*

*Attorneys for Defendant,*
*Joe Caputo and Sons – Algonquin, Inc.*

.

# EXHIBIT 24

*Aliano v. Caputo, No. 09-CV-0910,*
United States District Court for the Northern District Of Illinois, Eastern Division
Exhibits to Defendant's Reply In Further Support Of Its Summary Judgment Motion

## Torosian, Jeffrey S. (Shld-Chi-LT)

| | |
|---|---|
| **From:** | Tom Zimmerman [tom@attorneyzim.com] |
| **Sent:** | Monday, January 31, 2011 11:57 AM |
| **To:** | Torosian, Jeffrey S. (Shld-Chi-LT) |
| **Cc:** | Del Aguila, Paul (Assoc-Chi-LT) |
| **Subject:** | RE: Aliano v. Caputo and Sons - Subpoena to American Express |

**Attachments:** aff.elliott.amex.doc

Here it is.

Tom Zimmerman
www.attorneyzim.com

---

**From:** TorosianJ@gtlaw.com [mailto:TorosianJ@gtlaw.com]
**Sent:** Monday, January 31, 2011 11:47 AM
**To:** tom@attorneyzim.com
**Cc:** DelAguilaP@gtlaw.com
**Subject:** RE: Aliano v. Caputo and Sons - Subpoena to American Express

Please email me a word version of the draft affidavit you sent me. Thanks,

Jeffrey S. Torosian
Shareholder
Greenberg Traurig, LLP | 77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
Tel 312.476.5046 | Fax 312.899.0424 | Cell 847.997.6400
TorosianJ@gtlaw.com | www.gtlaw.com



**USA LAW FIRM OF THE YEAR, CHAMBERS GLOBAL AWARDS 2007**

ALBANY · AMSTERDAM · ATLANTA · AUSTIN · BOSTON · CHICAGO · DALLAS · DELAWARE · DENVER · FORT LAUDERDALE · HOUSTON · LAS VEGAS ·
LONDON* · LOS ANGELES · MIAMI · NEW JERSEY · NEW YORK · ORANGE COUNTY · ORLANDO · PALM BEACH COUNTY · PHILADELPHIA · PHOENIX ·
SACRAMENTO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · TALLAHASSEE · TAMPA · TYSONS CORNER · WASHINGTON, D.C. · WHITE PLAINS
*OPERATES AS GREENBERG TRAURIG MAHER LLP

---

**From:** Tom Zimmerman [mailto:tom@attorneyzim.com]
**Sent:** Friday, January 28, 2011 12:56 PM
**To:** Torosian, Jeffrey S. (Shld-Chi-LT)
**Cc:** Del Aguila, Paul (Assoc-Chi-LT)
**Subject:** RE: Aliano v. Caputo and Sons - Subpoena to American Express

The David Elliott affidavit with attached documents is being hand delivered to you today.

Tom Zimmerman
www.attorneyzim.com

**From:** TorosianJ@gtlaw.com [mailto:TorosianJ@gtlaw.com]
**Sent:** Friday, January 21, 2011 4:13 PM
**To:** tom@attorneyzim.com
**Cc:** DelAguilaP@gtlaw.com
**Subject:** Aliano v. Caputo and Sons - Subpoena to American Express

Tom: As confirmation of our telephone conversation this afternoon, you and I agreed to the following:

-You will provide me with a draft affidavit or declaration for David Elliott's signature regarding the issues on which you originally wanted to depose Mr. Elliott;
-Mr. Elliott will edit your draft as appropriate and sign it and we will forward it back to you; and
-You will enter and continue your Motion for Contempt against American Express and, once we provide the affidavit, withdraw it completely.

Please contact me if this doesn't accurately reflect our agreement. Thanks,

Jeffrey S. Torosian
Shareholder
Greenberg Traurig, LLP | 77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
Tel 312.476.5046 | Fax 312.899.0424 | Cell 847.997.6400
TorosianJ@gtlaw.com | www.gtlaw.com

USA LAW FIRM OF THE YEAR, CHAMBERS GLOBAL AWARDS 2007

ALBANY · AMSTERDAM · ATLANTA · AUSTIN · BOSTON · CHICAGO · DALLAS · DELAWARE · DENVER · FORT LAUDERDALE · HOUSTON · LAS VEGAS · LONDON* · LOS ANGELES · MIAMI · NEW JERSEY · NEW YORK · ORANGE COUNTY · ORLANDO · PALM BEACH COUNTY · PHILADELPHIA · PHOENIX · SACRAMENTO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · TALLAHASSEE · TAMPA · TYSONS CORNER · WASHINGTON, D.C. · WHITE PLAINS
*OPERATES AS GREENBERG TRAURIG MAHER LLP

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

2/11/2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KATHY ALIANO,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.    09 cv 0910 |
| | ) |
| **JOE CAPUTO AND SONS – ALGONQUIN,** | ) Judge Leinenweber |
| **INC.**, an Illinois corporation, individually, and | ) |
| d/b/a JOE CAPUTO & SONS FRUIT MARKET; | ) Magistrate Judge Mason |
| and DOES 1-10, | ) |
| | ) |
| Defendant. | ) |

## AFFIDAVIT OF DAVID ELLIOTT

I, David Elliott, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      The facts stated herein are of my own personal knowledge, and if called as a witness I could and would competently testify to the truth thereof.

2.      I am a project analyst employed at American Express Merchant Services ("American Express").

3.      As a project analyst, my duties include and require me to understand and oversee record keeping of American Express as relating to American Express merchants.

4.      In the normal course of my employment at American Express, I am familiar with, have full access to, and regularly use internal databases that are maintained in the ordinary course of business at American Express and accurately identify American Express merchants, the dates on which they became American Express merchants, the addresses and authorized signers for these merchants, and the documents sent from American Express to its merchants as

well as the dates on which the documents were sent. I have full authority to search these databases, and I conducted a search which produced the documents attached hereto as Exhibits 1 through 6 and the information concerning the three Joe Caputo entities referenced herein.

5.     As part of my job duties, I am familiar with the American Express policies and procedures existing from September 2004 to the present regarding documents that American Express created and sent to its merchants, and the dates on which those documents were sent.

6.     It is and at all relevant times was the regular practice of American Express to create, record and maintain the documents that are attached hereto as Exhibits 1 through 6.

7.     The documents attached hereto as Exhibits 1 through 6 are American Express documents, created by people with knowledge of the acts and events appearing on them. The documents were created and recorded at or near the time of the events referenced thereon.

8.     The documents attached hereto as Exhibits 1 through 6 are kept in the course of regularly conducted business activities at American Express.

9.     Joe Caputo and Sons, Inc. is and has been an American Express merchant from November 15, 1999 to the present (Merchant ID 3122533870). Nat Caputo is and at all relevant times was the authorized signer on the American Express account for Joe Caputo and Sons, Inc. The address that American Express has on file for Joe Caputo and Sons, Inc. is 959 East Oakton Street, Des Plaines, Illinois.

10.     Joe Caputo & Sons Produce – Palatine, Inc. is and has been an American Express merchant from January 19, 2005 to the present (Merchant ID 3121201529). Nat Caputo is and at all relevant times was the authorized signer on the American Express account for Joe Caputo &

2

Sons Produce – Palatine, Inc. The address that American Express has on file for Joe Caputo & Sons Produce – Palatine, Inc. is 2070 North Rand Road, Palatine, Illinois.

11. Joe Caputo and Sons – Algonquin, Inc. is and has been an American Express merchant from December 29, 2006 to the present (Merchant ID 3121753180). Nat Caputo is and at all relevant times was the authorized signer on the American Express account for Joe Caputo and Sons – Algonquin, Inc. The address that American Express has on file for Joe Caputo and Sons – Algonquin, Inc. is 100 South Randall Road, Algonquin, Illinois.

12. Based on my database search, experience and job duties at American Express, I can competently testify that it would have been the normal course of business and the custom and practice at American Express to send the document attached hereto as Exhibit 1 to all American Express merchants of record in September 2004, and in September 2004 American Express sent the document attached hereto as Exhibit 1 to Joe Caputo and Sons, Inc. at 959 East Oakton Street, Des Plaines, Illinois.

13. Based on my database search, experience and job duties at American Express, I can competently testify that it would have been the normal course of business and the custom and practice at American Express to send the document attached hereto as Exhibit 2 to all American Express merchants of record in September 2005, and in September 2005 American Express sent the document attached hereto as Exhibit 2 to Joe Caputo and Sons, Inc. at 959 East Oakton Street, Des Plaines, Illinois, and to Joe Caputo & Sons Produce – Palatine, Inc. at 2070 North Rand Road, Palatine, Illinois.

14. Based on my database search, experience and job duties at American Express, I can competently testify that it would have been the normal course of business and the custom

3

and practice at American Express to send the document attached hereto as Exhibit 3 to all American Express merchants of record in October 2006, and in October 2006 American Express sent the document attached hereto as Exhibit 3 to Joe Caputo and Sons, Inc. at 959 East Oakton Street, Des Plaines, Illinois, and to Joe Caputo & Sons Produce – Palatine, Inc. at 2070 North Rand Road, Palatine, Illinois.

15.    Based on my database search, experience and job duties at American Express, I can competently testify that it would have been the normal course of business and the custom and practice at American Express to send the document attached hereto as Exhibit 4 to all American Express merchants of record in September 2007, and in September 2007 American Express sent the document attached hereto as Exhibit 4 to Joe Caputo and Sons, Inc. at 959 East Oakton Street, Des Plaines, Illinois, to Joe Caputo & Sons Produce – Palatine, Inc. at 2070 North Rand Road, Palatine, Illinois, and to Joe Caputo and Sons – Algonquin, Inc. at 100 South Randall Road, Algonquin, Illinois.

16.    Based on my database search, experience and job duties at American Express, I can competently testify that it would have been the normal course of business and the custom and practice at American Express to send the document attached hereto as Exhibit 5 to all American Express merchants of record in October 2008, and in October 2008 American Express sent the document attached hereto as Exhibit 5 to Joe Caputo and Sons, Inc. at 959 East Oakton Street, Des Plaines, Illinois, to Joe Caputo & Sons Produce – Palatine, Inc. at 2070 North Rand Road, Palatine, Illinois, and to Joe Caputo and Sons – Algonquin, Inc. at 100 South Randall Road, Algonquin, Illinois.

4

17. Based on my database search, experience and job duties at American Express, I can competently testify that it would have been the normal course of business and the custom and practice at American Express to send the document attached hereto as Exhibit 6 to all American Express merchants of record in March 2009, and in March 2009 American Express sent the document attached hereto as Exhibit 6 to Joe Caputo and Sons, Inc. at 959 East Oakton Street, Des Plaines, Illinois, to Joe Caputo & Sons Produce – Palatine, Inc. at 2070 North Rand Road, Palatine, Illinois, and to Joe Caputo and Sons – Algonquin, Inc. at 100 South Randall Road, Algonquin, Illinois.

18. American Express does not have any records indicating that any of the foregoing documents were returned to American Express as undeliverable from any of the foregoing Joe Caputo entities.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. This affidavit was executed on February ____, 2011.

_____
David Elliott

5

# EXHIBIT 25

.

*Aliano v. Caputo, No. 09-CV-0910,*
United States District Court for the Northern District Of Illinois, Eastern Division
Exhibits to Defendant's Reply In Further Support Of Its Summary Judgment Motion

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KATHY ALIANO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.    09 cv 0910 |
| ) | |
| **JOE CAPUTO AND SONS – ALGONQUIN,** ) | Judge Leinenweber |
| **INC.,** an Illinois corporation, individually, and ) | |
| d/b/a JOE CAPUTO & SONS FRUIT MARKET; ) | Magistrate Judge Mason |
| and DOES 1-10, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF DAVID ELLIOTT

I, David Elliott, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      The facts stated herein are of my own personal knowledge, and if called as a witness I could and would competently testify to the truth thereof.

2.      I am an Operations Analyst employed at American Express Travel Related Services in the Merchant Services department ("American Express").

3.      As an Operations Analyst, my duties include and require me to understand and oversee record keeping of American Express as relating to American Express merchants.

4.      In the normal course of my employment at American Express, I am familiar with, have full access to, and regularly use internal databases that are maintained in the ordinary course of business at American Express and accurately identify American Express merchants, the dates on which they became American Express merchants, the addresses and authorized signers for these merchants, and the documents sent from American Express to its merchants as

well as the approximate months in which the documents were sent. I have full authority to search these databases and have searched these databases before executing this Affidavit.

5.       As part of my job duties, I am familiar with the American Express policies and procedures existing from September 2004 to the present under which American Express created and sent to its merchants documents pertaining to the terms and conditions of American Express Card Acceptance and American Express Merchant Regulations, including the documents attached hereto as Exhibits 1 through 7, and the approximate months in which those documents were sent.

6.       The documents attached hereto as Exhibits 1 through 7 were all made and kept by American Express in the regular course of its business.

7.       Joe Caputo and Sons is and has been an American Express merchant from November 15, 1999 to the present (Merchant ID 3122533870). Nat Caputo is and at all relevant times was the authorized signer on the American Express account for Joe Caputo and Sons. The address that American Express has on file for Joe Caputo and Sons is 959 East Oakton Street, Des Plaines, Illinois 60018. This is the address to which American Express would send documents to this merchant.

8.       Joe Caputo & Sons Produce–Palati (this merchant's name was truncated in the computer database) is and has been an American Express merchant from January 19, 2005 to the present (Merchant ID 3121201529). Nat Caputo is and at all relevant times was the authorized signer on the American Express account for Joe Caputo & Sons Produce–Palati. The address that American Express has on file for Joe Caputo & Sons Produce–Palati is 2070 North Rand

2

Road, Unit 2, Palatine, Illinois 60074. This is the address to which American Express would send documents to this merchant.

9.　Joe Caputo and Sons–Algon (this merchant's name was truncated in the computer database) is and has been an American Express merchant from December 29, 2006 to the present (Merchant ID 3121753180). Natale V. Caputo is and at all relevant times was the authorized signer on the American Express account for Joe Caputo and Sons–Algon. The address that American Express has on file for Joe Caputo and Sons–Algon is 100 South Randall Road, Algonquin, Illinois 60102, along with an additional address for correspondence of Natale V. Caputo, 2070 North Rand Road, Palatine, Illinois 60074. The correspondence address is the address to which American Express would send documents to this merchant.

10.　In or about September 2004, American Express sent a copy of Exhibit 1 to all active American Express merchants that were not listed on its exclusion list. American Express' exclusion list is a list of all American Express merchants who have a custom or specialized contract with American Express. Joe Caputo and Sons was an active American Express merchant that was not on the exclusion list at that time.

11.　In or about September and October 2005, American Express sent a copy of Exhibit 2 to all active American Express merchants that were not listed on its exclusion list. Joe Caputo and Sons and Joe Caputo & Sons Produce–Palati were active American Express merchants that were not on the exclusion list at that time.

12.　In or about September and October 2006, American Express sent a copy of Exhibit 3 to all active American Express merchants that were not listed on its exclusion list. Joe

3

Caputo and Sons and Joe Caputo & Sons Produce–Palati were active American Express merchants that were not on the exclusion list at that time.

13.    In or about September 2007, American Express sent a copy of Exhibit 4 to all active American Express merchants that were not listed on its exclusion list. Joe Caputo and Sons, Joe Caputo & Sons Produce–Palati, and Joe Caputo and Sons–Algon were active American Express merchants that were not on the exclusion list at that time.

14.    In or about October 2008, American Express sent a copy of Exhibit 5 to all active American Express merchants that were not listed on its exclusion list. Joe Caputo and Sons, Joe Caputo & Sons Produce–Palati, and Joe Caputo and Sons–Algon were active American Express merchants that were not on the exclusion list at that time.

15.    In or about April 2009, American Express sent a copy of Exhibit 6 to all active American Express merchants that were not on its exclusion list. Joe Caputo and Sons, Joe Caputo & Sons Produce–Palati, and Joe Caputo and Sons–Algon were active American Express merchants that were not on the exclusion list at that time. Exhibit 7 is a copy of the American Express U.S. Merchant Operating Policy and Procedures Manual dated April 2008 that was made available as referenced in Exhibit 6.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. This affidavit was executed on February 11th, 2011.



David Elliott

*CHI 60,754,041v2 2-11-11*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KATHY ALIANO

          Plaintiff,

    v.

JOE CAPUTO & SONS – ALGONQUIN,
INC., An Illinois Corporation, individually and
d/b/a JOE CAPUTO & SONS FRUIT
MARKET; and DOES 1-10,

          Defendants.

CIVIL ACTION No. 09-CV-0910
Hon. Harry D. Leinenweber
Magistrate Judge Mason

**CERTIFICATE OF SERVICE OF DEFENDANT
JOE CAPUTO & SONS – ALGONQUIN, INC.'S
MOTION FOR SUMMARY JUDGMENT**

     I hereby certify that, on this date, I caused a true and correct copy of the foregoing *Reply Memorandum In Further Support Of Defendant Joe Caputo & Sons – Algonquin, Inc.'s Motion For Summary Judgment*, to be served on the following by electronic means through the court's transmission system:

Thomas A. Zimmerman, Jr., Esquire
Adam M. Tamburelli, Esquire,
ZIMMERMAN LAW OFFICES, P.C.,
77 West Washington Street, Suite 1220
Chicago, IL 60602
*Attorneys for Plaintiff, Kathy Aliano.*

/s Allison L. Kashon
**FOX ROTHSCHILD LLP**
Allison L. Kashon (*pro hac vice*)
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
Telephone: (609) 348-4515
Facsimile: (609) 348-6834
Email: akashon@foxrothschild.com

*Dated: April 1, 2011*

*Attorneys for Defendant,
Joe Caputo and Sons – Algonquin, Inc.*