```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | |
|---|---|
| **KATHY ALIANO, Individually and on Behalf of All Others Similarly Situated,**<br><br>         **Plaintiff,**<br><br>    **v.**<br><br>**JOE CAPUTO AND SONS – ALGONQUIN, INC., an Illinois Corporation, Individually and d/b/a JOE CAPUTO & SONS FRUIT MARKET; and DOES 1-10,**<br><br>         **Defendants.** | **Case No. 09 C 910**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Joe Caputo and Sons – Algonquin, Inc.'s (hereinafter, the "Defendant") Motion for Summary Judgment. For the reasons stated herein, the Motion is denied.

### I. INTRODUCTION

Plaintiff Kathy Aliano (hereinafter, the "Plaintiff") lives in Villa Park, Illinois. On February 12, 2008, she shopped at Joe Caputo & Sons Fruit Market in Algonquin, Illinois, and used her Discover credit card to purchase $105.57 in groceries. She received a receipt from the store that showed the first six digits and last four digits of her credit card number, which violates the Fair and Accurate Credit Transactions Act ("FACTA"). 15 U.S.C. § 1681c(g)(1)("[N]o person that accepts credit cards or debit cards

for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.").

On February 12, 2009, Plaintiff filed a putative Class Action Complaint against Defendant, seeking statutory damages of $100 to $1,000 per FACTA violation, plus attorneys' fees and costs, for Defendant's alleged willful FACTA violations. Aliano has not claimed any actual injury from Defendant's actions. The Court certified the putative class in an opinion read in court on September 21, 2010.

Brothers Natale and Vito Caputo co-own the Defendant grocery store. The brothers also own and operate retail produce markets in Palatine and Des Plaines, which are each separate corporate entities. Natale serves as Defendant's President, and Vito as its Vice President, Secretary, and Treasurer. Defendant opened to the public on August 30, 2007. To implement its electronic transactions system, Defendant retained Integrated Store Systems, Inc. ("ISSI"). ISSI purchased, upgraded, and maintained the equipment for Defendant's point-of-sale system, which included the equipment to print credit and debit card receipts. ISSI selected and installed the Store Management Suite software manufactured by LOC Software for Defendant's point-of-sale system. Defendant alleges it did not know that this software did not comply with

FACTA's truncation requirements until Plaintiff filed this lawsuit, and that it relied completely on ISSI for its FACTA truncation compliance.

Plaintiff filed this action on February 12, 2009. In November 2008, ISSI President Roger Larsen ("Larsen") informed Defendant that it had an upgrade to install for the point-of-sale software. This installation would take at least three to four weeks to complete and require Defendant to close some of its check-out lanes. Defendant did not want this disruption to occur during the holiday season, which is its most active time of the year for business. Defendant alleges that Larsen did not tell it that the upgrade would make it FACTA compliant, but rather that Larsen said it would make the system more efficient. Larsen testified at a deposition that the upgraded software would truncate the printed credit or debit card numbers on receipts to five or fewer digits. In an interrogatory response, Defendant states that it became aware of FACTA's truncation requirements in September 2007, when Natale Caputo received a phone call from his cousin-in-law, Robertino Presta ("Presta"), the President of Caputo's New Farm Produce, Inc. Presta was being sued by the same Plaintiff in this case for violating FACTA. Defendant, however, argues that Presta did not tell Natale about the specific nature of the lawsuit, such as that it involved credit card receipts or that it involved improper

truncation on the receipts. Defendant also argues that it did not understand the question to which it gave this answer.

## II. **LEGAL STANDARD**

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the suit, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *See id*. at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *See Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d

160, 163 (7th Cir. 1984). To support their position that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. Fed. R. Civ. P. 56(c).

### III. **ANALYSIS**

FACTA statutory damages are limited to willful noncompliance. 15 U.S.C. § 1681n(a). The Supreme Court has held that willful noncompliance under FACTA encompasses both knowing and reckless behavior. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60 (2007). The Court cited the Restatement (Second) of Torts in giving context to the definition of "reckless":

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Id*. at 69 (citing *Restatement (Second) of Torts* § 500 (1963–64)). The legislative history of FACTA and the Credit and Debit Card Clarification Act does not offer any indication that a "knowing" violation would include anything other than its usual meaning.

Defendant argues that it did not know of FACTA's truncation requirements prior to this lawsuit, and that the evidence does not show that it recklessly violated FACTA. However, in answering Plaintiff's interrogatories, Defendant stated that it first learned of credit and debit card truncation requirements in September 2007, as a result of the lawsuit filed by Kathy Aliano against Caputo's New Farm Produce, Inc. Defendant now argues that it did not understand the question to which it responded. Rather, it "understood Plaintiff to be asking when it first became aware of compliance," and responded by referencing the calls Natale Caputo received from his cousin-in-law Presta. Def.'s Reply Br. 6 n.2. The question, however, is straightforward: "State how and when you first learned of truncation requirements." Pl.'s Local Rule 56.1 Statement Additional Facts Ex. 6. The question does not specifically state "FACTA truncation requirements," but as the lawsuit concerns a FACTA truncation violation, the question's reference to FACTA is presumed.

Defendant asks the Court to weigh competing statements in the record to determine that it did not know of FACTA's truncation requirements prior to this lawsuit. A factual determination such as this on a material fact is improper on summary judgment. *See Anderson*, 477 U.S. at 255; *Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993). While the Court acknowledges that Defendant has amended its response concerning when it learned of FACTA's

Defendant argues that it did not know of FACTA's truncation requirements prior to this lawsuit, and that the evidence does not show that it recklessly violated FACTA. However, in answering Plaintiff's interrogatories, Defendant stated that it first learned of credit and debit card truncation requirements in September 2007, as a result of the lawsuit filed by Kathy Aliano against Caputo's New Farm Produce, Inc. Defendant now argues that it did not understand the question to which it responded. Rather, it "understood Plaintiff to be asking when it first became aware of compliance," and responded by referencing the calls Natale Caputo received from his cousin-in-law Presta. Def.'s Reply Br. 6 n.2. The question, however, is straightforward: "State how and when you first learned of truncation requirements." Pl.'s Local Rule 56.1 Statement Additional Facts Ex. 6. The question does not specifically state "FACTA truncation requirements," but as the lawsuit concerns a FACTA truncation violation, the question's reference to FACTA is presumed.

Defendant asks the Court to weigh competing statements in the record to determine that it did not know of FACTA's truncation requirements prior to this lawsuit. A factual determination such as this on a material fact is improper on summary judgment. *See Anderson*, 477 U.S. at 255; *Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993). While the Court acknowledges that Defendant has amended its response concerning when it learned of FACTA's

Defendant argues that it did not know of FACTA's truncation requirements prior to this lawsuit, and that the evidence does not show that it recklessly violated FACTA. However, in answering Plaintiff's interrogatories, Defendant stated that it first learned of credit and debit card truncation requirements in September 2007, as a result of the lawsuit filed by Kathy Aliano against Caputo's New Farm Produce, Inc. Defendant now argues that it did not understand the question to which it responded. Rather, it "understood Plaintiff to be asking when it first became aware of compliance," and responded by referencing the calls Natale Caputo received from his cousin-in-law Presta. Def.'s Reply Br. 6 n.2. The question, however, is straightforward: "State how and when you first learned of truncation requirements." Pl.'s Local Rule 56.1 Statement Additional Facts Ex. 6. The question does not specifically state "FACTA truncation requirements," but as the lawsuit concerns a FACTA truncation violation, the question's reference to FACTA is presumed.

Defendant asks the Court to weigh competing statements in the record to determine that it did not know of FACTA's truncation requirements prior to this lawsuit. A factual determination such as this on a material fact is improper on summary judgment. *See Anderson*, 477 U.S. at 255; *Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993). While the Court acknowledges that Defendant has amended its response concerning when it learned of FACTA's

truncation requirements, it will not weigh these statements to determine when Defendant gained this knowledge.

Plaintiff alleges FACTA violations starting in February 2008, approximately five months after the date when Defendant stated in its interrogatory answer that it knew of FACTA's truncation requirements. Accordingly, the evidence points to knowing FACTA violations. Defendant could argue that it did not know that its credit and debit card receipts violated FACTA despite knowing of the statute's truncation requirements. However, if Defendant knew of these requirements, and did not make efforts to determine if it complied with the statute, a genuine issue of material fact exists whether it recklessly violated the statute. *See, e.g., J.I. Case Credit Corp. v. First Nat. Bank of Madison Cnty.*, 991 F.2d 1272, 1278 (7th Cir. 1993)("To consciously ignore or to deliberately close one's eyes to a manifest danger is recklessness, a mental state that the law commonly substitutes for intent or actual knowledge.").

Plaintiff contends that Defendant "was bombarded with repeated warnings and notifications about FACTA and credit card truncation." Pl's Resp. Br. 7. As such, she argues, even disregarding the interrogatory answer and whether Defendant knowingly violated FACTA, Defendant recklessly violated the statute. This assertion distorts the evidence. Besides the conversations that Natale had with Presta, the evidence demonstrating that Defendant received

FACTA truncation information comprises three mailings from its credit card processing banks. Defendant received two of these mailings prior to opening the Algonquin store — one in September 2004 with documents from American Express Merchant Services and another in December 2006 from Fifth Third Bank Processing Solutions that contained a publication by the PCI Security Standards Council. On July 18, 2008, Fifth Third sent Defendant a billing statement, which also included information about FACTA's truncation requirements. This evidence, without the interrogatory response, does not present a genuine issue of material fact that Defendant willfully violated FACTA. Plaintiff admits that Natale never opened or reviewed the mailings from Fifth Third. Rather, Natale gave these documents to his accountant without reviewing them. This may constitute negligence, but it does not establish recklessness. Rather than the deluge of FACTA truncation notifications that Plaintiff alleges, Defendant received a trickle of information, most of which it did not review.

Plaintiff also admits that ISSI selected, installed, and maintained the point-of-sale system at Defendant's store, and that Defendant relied on ISSI to ensure that the equipment and software complied with applicable laws. Defendant made the decision to retain ISSI for its point-of-sale system, and it cannot pass its duties to comply with FACTA on to ISSI. Plaintiff admits, however, that ISSI never disclosed to Defendant that the November 2008

upgrade to the point-of-sale software would make its credit and debit card receipts FACTA compliant. Defendant's good-faith reliance on a company experienced with point-of-sale systems, and assurances from ISSI that it complied with FACTA, factor against Defendant acting with the level of recklessness the Supreme Court enunciated would create a willful FACTA violation. *See Safeco*, 551 U.S. at 69.

That being said, issues of intent are usually improper to decide on summary judgment, unless "the undisputed facts make the outcome clear." *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1160 (7th Cir. 1993). In this case, the outcome is not clear, as a genuine dispute exists whether Defendant knew about FACTA's truncation requirements in September 2007. This material fact could help establish that Defendant willfully violated FACTA. Accordingly, Defendant's Motion for Summary Judgment is denied.

Moving forward, the Court notes Plaintiff's assertion that documents produced by Defendant verify 294,134 FACTA violations. Pl's Resp. Br. 2 n.2. In the oral ruling granting Plaintiff's Motion for Class Certification, the Court stated that the number of people in the putative class exceeds 300,000. This appears to have been a misstatement. The Court certified the class as "all persons to whom the Defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays more than

the last five digits of the person's credit card or debit card number." *CM/ECF No. 184*, Sept. 21, 2010. FACTA imposes liability on a per-consumer basis, rather than on a per-receipt basis. 15 U.S.C. § 1681n(a); *see also Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 275-76 (4th Cir. 2010)(Wilkinson, J., concurring). This is the class that Plaintiff moved to certify. Plaintiff, however, has not specified whether each verified FACTA violation is from a separate individual, or if some individuals received multiple noncompliant receipts. Consumers frequent their local grocery stores, and it is reasonable for the Court to presume that the total number of noncompliant receipts exceeds the number of individual consumers who received these receipts. A more accurate figure of the number of individual consumers who received improperly truncated receipts should help this litigation proceed.

Also, even with the reduced liability associated with a per-consumer figure, the Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights. *See, e.g., BMW N. Am., Inc. v. Gore*, 517 U.S. 559, 586 (1996)(finding a $2 million punitive damages award where there were only $4,000 in compensatory damages "grossly excessive" and in violation of defendant's due process rights); *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003)(reversing a $145 million punitive damages award in a case in which the plaintiff was awarded

$1 million in compensatory damages). If each one of the alleged 294,134 FACTA violations pertains to a separate individual, Defendant faces a minimum liability of approximately $29.4 million and possibly more than $294 million in statutory damages if a jury rules against it. Again, Plaintiff does not allege any actual damages from Defendant's alleged violations. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 5/5/2011