Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 910 | **DATE** | 6/17/2011 |
| **CASE TITLE** | Aliano vs. Joe Caputo & Sons - Algonquin, Inc. | | |

**DOCKET ENTRY TEXT**

Plaintiff Kathy Aliano's Motion for Approval of Class Notice Plan [236] is granted. Plaintiff shall use the class definition set forth in this Opinion in executing her class notification. The oral ruling date of 6/23/2011 is stricken.

■[ For further details see text below.]   Docketing to mail notices.

# STATEMENT

On February 12, 2008, Plaintiff Kathy Aliano (hereinafter, the "Plaintiff") shopped at Joe Caputo & Sons Fruit Market in Algonquin, Illinois, and used her Discover credit card to purchase $105.57 in groceries. She received a receipt from the store that showed the first six digits and last four digits of her credit card number, which violates the Fair and Accurate Credit Transactions Act ("FACTA"). 15 U.S.C. § 1681c(g)(1). Plaintiff subsequently filed a putative Class Action Complaint against Defendant Joe Caputo and Sons – Algonquin, Inc.'s (hereinafter, the "Defendant"), seeking statutory damages of $100 to $1,000 per FACTA violation, plus attorneys' fees and costs, for Defendant's alleged willful FACTA violations. Aliano does not claim any actual damages from Defendant's actions. The Court certified the putative class on September 21, 2010. Following this Court's denial of Defendant's Motion for Summary Judgment [235], Plaintiff moved to approve a class notice plan. [236]

As an initial matter, a dispute exists over the potential class size. While Plaintiff alleges the class may comprise more than 294,000 individuals, Defendant argues that, at maximum, 77,214 individuals received a receipt that did not comply with FACTA. Defendant calculated this number by eliminating records with duplicate credit card numbers from its credit card transaction records from August 2007 through February 28, 2009, produced to Plaintiff by FifthThird Bank Processing Solutions.

Defendant argues that with this reduced class size, Plaintiff must send individual notice to each member of the class pursuant to Federal Rule of Civil Procedure 23(c)(2)(B). "[M]embers of a Rule 23(b)(3) class must receive reasonable notice and an opportunity to opt out; that is an absolute requirement for a court to exercise jurisdiction over those class members." *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 321 (7th Cir. 1995). In order to effectuate this notice, the Court must "direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quotation omitted).

In this case, Defendant's plan for individual notice is not reasonable. The text file from FifthThird Bank Processing Solutions does not contain the names and addresses associated with each credit or debit card

| STATEMENT |
|---|

transaction. Plaintiff cannot subpoena Visa, MasterCard, Discover, and American Express to obtain the contact information for the 77,214 unique card holders who may have received noncompliant receipts. Plaintiff's counsel stated in open court on June 3, 2011, that he had contacted representatives from Visa and MasterCard, who informed him that Plaintiff would have to subpoena each issuing bank to obtain the information required to provide individual notice. This could involve issuing a large number of subpoenas to banks, some of which are outside the jurisdiction of this Court. Such a notification process would be inefficient, overly expensive, and create an unreasonable litigation delay.

Plaintiff's class notice plan by publication is reasonable and practicable. *See, e.g., Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004). The Court assumes that most of Defendant's customers live in a reasonably close proximity to the Algonquin store. Plaintiff's class notice plan would effectively notify prospective members of the class who received receipts that did not comply with FACTA. Accordingly, Plaintiff's Motion for Approval of Class Notice Plan is granted. Plaintiff shall notify the class by: (1) causing the notice to be published one time on a week day in the *Chicago Tribune,* Northwest Zone; (2) causing the notice to be published one time on a week day in the *Northwest Herald*; (3) providing cardstock copies of the notice for Defendant to post at its Algonquin location for 35 days; (4) providing the notice in a .pdf digital file to Defendant's counsel so that Defendant can post it on its website for 35 days; and (5) posting the notice on Plaintiff's counsel's website for 35 days.

The next issue with the notice is the definition of the certified class to be included in this notice. *See* Fed. R. Civ. P. 23(c)(2)(B)(ii). Two sticking points remain between the parties: (1) the end date in the class period, and (2) whether the class definition should include language that the class seeks only statutorily defined damages for willful violations of the statute, and does not include individuals who seek actual damages.

In regard to the class period issue, Defendant argues that it stopped printing credit and debit card receipts that did not comply with FACTA by February 2, 2009. Plaintiff agrees that Defendant became FACTA compliant in February 2009, but that because no evidence exists in the record as to the exact date in February when this occurred, the class period in the definition should end on February 28, 2009. As such, this would ensure adequate notice to the entire class, and, Plaintiff argues, not disadvantage Defendant because an individual who received a FACTA-compliant receipt in this time period would not fall within the class.

The evidence does not support Defendant's argument that it became FACTA compliant by February 2, 2009. In his deposition, Roger Larsen, president of the company ISSI that selected, installed, and maintained Defendant's point-of-sale system software, stated that an upgrade to the system began in January 2009, and that "[i]t would take us three to four weeks to do the upgrades, probably, at a minimum." Larsen Dep. 31:10–14, Mar. 17, 2010. Defendant cannot rely on this ambiguous statement for its proposed end date for the class. While Defendant probably became FACTA compliant prior to February 28, 2009, it has not presented any evidence as to when this occurred. However, the parties have not presented any method by which the Court can determine if an individual who received a printed receipt from Defendant on, for example, February 17, 2009, received a receipt that complied with FACTA. Further, it is highly unlikely that potential class members from February 2009 retained their credit and debit card receipts from their purchases at Defendant's store. Therefore, if Defendant had in fact become FACTA compliant by the hypothetical February 17 date, but the class period provided for in the class definition extends to February 28, then the class will include improper individuals.

The Court believes that Larsen's deposition testimony, coupled with that from Natale Caputo, Defendant's president, creates a reasonable likelihood that Defendant became FACTA compliant by February 14, 2009. The Court therefore splits the difference between the parties' proposed class end dates, and holds that the class period runs through February 14, 2009.

Finally, a dispute exists whether the class definition must include language indicating that this action includes claims for only statutory damages. Defendant's claim for actual damages has been dismissed with

| STATEMENT |
|---|

prejudice. CM/ECF No. 108, May 13, 2010. The class, therefore, should be properly defined as individuals who seek statutory damages. Mention of the damages sought must appear in the definition to ensure proper notice. Further, Plaintiff misstates the law in arguing that an individual may pursue actual damages in a separate action if they are a member of the class in this litigation. The plain language of FACTA states that an individual may obtain actual or statutory damages, not both. 15 U.S.C. § 1681n(a)(1)(A) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000.") (emphasis added).

Accordingly, the certified class definition to be provided in the class notice shall be:

> All individual credit or debit cardholders who made a purchase from Defendant Joe Caputo & Sons – Algonquin Inc. (trading as Joe Caputo & Sons Fruit Market) ("Caputo") and who received from Caputo an electronically printed receipt at the point of sale or transaction, in a transaction occurring at 100 S. Randall Road, Algonquin, Illinois, between August 27, 2007, and February 14, 2009, which receipt displays more than the last five digits of the individual's credit or debit card number.
>
> Excluded from the class are business and entity cardholders; any cardholder who seeks actual damages as a result of receiving an aforementioned printed receipt from Caputo, as the class seeks only statutorily defined damages as set forth in 15 U.S.C. § 1681n for willful violations of the statute; the owners, agents, and employees of Caputo; any judicial officers of the United States and/or the State of Illinois; and counsel for the parties in this action.