**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHY ALIANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 0910 |
| | ) | |
| JOE CAPUTO & SONS – ALGONQUIN, INC., | ) | Honorable Harry D. Leinenweber |
| an Illinois Corporation, individually and d/b/a | ) | |
| JOE CAPUTO & SONS FRUIT MARKET, and | ) | Magistrate Michael T. Mason |
| DOES 1-10, | ) | |
| | ) | |
| Defendant. | ) | |

**CLASS COUNSEL'S PETITION FOR AN AWARD
OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR
APPROVAL OF THE INCENTIVE PAYMENT TO THE CLASS REPRESENTATIVE**

Class Counsel, Zimmerman Law Offices, P.C., was appointed as Class Counsel for the Settlement Class in this action by virtue of this Court's Preliminary Approval Order dated March 6, 2012 (Docket No. 286). Class counsel petitions this Court for an award of attorneys' fees and unreimbursed expenses incurred by it in connection with this action (the "Lawsuit"), as well as an award of an incentive payment to the Plaintiff as Class Representative.

**I.     INTRODUCTION.**

The Settlement Agreement contains the following provision concerning an award of fees and expenses to Class Counsel in the amount of $270,000 ("Attorneys' Fee Award"), as follows:

> **8.     Attorneys' Fees and Costs.** Subject to Court approval, within 10 business days of the Effective Date, Harleysville on behalf of Defendant, shall pay the sum of $275,000.00 (or whatever lesser amount is approved by the Court) to Class Counsel for payment for attorney's fees and costs. Class Counsel agrees that they will not request the Court to award more than $275,000.00 in fees and costs and should the Court do so, Class Counsel agrees that it will return any amount awarded to it for fees and costs above $275,000.00 to Harleysville. Defendant and Harleysville agree that they will not oppose any request by Class Counsel for

>fees and costs in the amount of $275,000.00 or less. Harleysville is to make payment by check payable to Zimmerman Law Offices, P.C. and the check is to be delivered to the offices of Class Counsel.

(See, ¶ 8 in Settlement Agreement, attached as Exhibit A to the Memorandum in Support of Motion for Final Approval of Class Action Settlement).

This Attorneys' Fee Award is significantly below the lodestar amount of $635,925.00 incurred by Class Counsel to date in this matter. Indeed, the Attorneys' Fee Award represents a miniscule 43% of that lodestar amount, which is eminently reasonable in this case. Furthermore, on top of that lodestar amount, Class Counsel incurred $6,971.67 in actual unreimbursed expenses in connection with this case through July 6, 2012.

Additionally, pursuant the Settlement Agreement, Plaintiff KATHY ALIANO ("Plaintiff"), who was previously appointed as the Class Representative in this case, is entitled to an incentive award of $10,000, as follows:

>**7(b)** **Payment of Incentive Award.** Subject to Court approval, within 10 business days after the Effective Date, Harleysville shall, on behalf of Defendant, issue a check to the Plaintiff, Kathy Aliano, in the amount of $10,000, as an incentive award for her service as the Class Representative in this case. This shall be the sole recovery of Plaintiff and Plaintiff shall not be entitled to file a claim to recover additional amounts. Defendant or Harleysville shall not oppose an incentive award of up to $10,000 to Plaintiff.

(See, ¶ 7(b) in Settlement Agreement, attached as Exhibit A to the Memorandum in Support of Motion for Final Approval of Class Action Settlement).

These requests for an award of attorneys' fees and costs capped at the agreed-upon amount of $270,000, and the agreed-upon $10,000 incentive award to Plaintiff, are fair and reasonable and should be approved by this Court for the reasons set forth below.

## II. THE MONETARY VALUE OF THE SETTLEMENT.

The monetary value of the Settlement Agreement is substantial. Defendant issued over 77,214 allegedly non-compliant receipts to Settlement Class members in Illinois. Those

Settlement Class members who submit a Valid Claim Form (as defined in the Settlement Agreement) will be entitled to a single payment of up to a maximum of $75.00. This $75.00 payment is an actual cash payment, and not a coupon or voucher.

Additionally, as a result of this lawsuit, Defendant has corrected its systemic computer error that caused its FACTA violations, and the Defendant no longer prints its customers' confidential information on its receipts. This is a substantial benefit to the public at large, as the legislative history of FACTA makes clear.

### III. CLASS COUNSEL'S WORK.

#### A. Litigation of the Case.

Prior to entering into the Settlement Agreement, this case was intensely litigated for over 2½ years (prior to engaging in fruitful settlement discussions), and involved an unusually large number of contested motions. Plaintiff initially filed her original putative Class Action Complaint on February 12, 2009. (Docket No. 1). The parties engaged in significant and contentious discovery for the next ten (10) months, and previously-named Defendants filed a motion for summary judgment. (Docket No. 44). Thereafter, Plaintiff filed an Amended Complaint on February 10, 2010. (Docket No. 64).

The Parties then engaged in significant written and oral discovery pertaining to the size and scope of the Class, as well as whether Class treatment was proper under Rule 23. Indeed, during discovery Plaintiff issued one set of request to admit facts, two (2) sets of document production requests, and three (3) sets of interrogatories to Defendant. Defendant issued three (3) sets of interrogatories and three (3) sets of document production requests to Plaintiff.

Additionally, the parties issued numerous subpoenas on third-parties, with Plaintiff issuing over ten (10) subpoenas in total. The parties also took eight (8) depositions, including two (2) depositions of the Plaintiff, two (2) depositions of Defendant's representatives, and four (4) depositions of third-parties.

After extensive discovery and legal research, Plaintiff filed a motion for class certification and supporting memorandum on May 7, 2010. (Docket Nos. 92, 94). During the pendency of the motion, the parties continued to engage in discovery. After full briefing on Plaintiff's motion for class certification, plus supplemental briefing on two (2) interim motions by Defendant to defer briefing on Plaintiff's motion to certify the class (Docket Nos. 96, 127), the Court granted Plaintiff's motion, and certified the Class. (Docket No. 184).

During the pendency of the motion for class certification, not only were the Parties still engaged in contentious discovery and motion practice related thereto, Defendant filed another motion for summary judgment. (Docket No. 151). Even still, Plaintiff continued to aggressively seek relevant discovery during the briefing period. Indeed, discovery was so difficult for Plaintiff to timely obtain that the filing of a motion to suspend briefing until she could obtain all outstanding discovery was necessary. (Docket No. 189). After the matter was fully briefed, including briefing on Plaintiff's motion to strike Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts (Docket No. 224), the Court ultimately denied Defendant's motion for summary judgment. (Docket No. 234).

The parties then engaged in litigation regarding the Class definition (Docket No. 255) and the propriety of Defendant's answer and affirmative defenses to Plaintiff's Amended Complaint. (Docket No. 253).

To be sure, discovery was consistently adversarial, and the parties engaged in repeated motion practice relative to discovery issues. There were four (4) motions to compel filed and briefed by the parties against each other—two (2) motions by Plaintiff and two (2) by Defendant. Plaintiff also filed two (2) motions for sanctions against Defendant for alleged discovery abuses, which required further briefing. (Docket Nos. 124, 173).

Additionally, third-parties were often uncooperative, requiring further motion practice. Plaintiff filed four (4) motions for contempt against third-parties in an attempt to force them to comply with valid subpoenas. (Docket Nos. 67, 143, 185, 203). The parties also fully briefed a motion to enforce another subpoena, as they disagreed whether Defendant was entitled to the information sought therein. (Docket Nos. 170, 178).

This was an extremely contentious and hard-fought case by both parties.

### B. Legal Research.

Class Counsel has analyzed the evidence and researched the applicable law with respect to the claims of Plaintiff and the Class against Defendant and the potential defenses thereto.

Extensive legal research in this case was necessary. FACTA is an evolving law, and new decisions are regularly issued by Courts around the country interpreting its provisions. Additionally, the law is applied inconsistently around the country.

For example, Plaintiff and the Class were only seeking statutory damages for Defendant's violations of FACTA. 15 U.S.C. § 1681n(a)(1)(A) provides for statutory damages only if a defendant's violations are "willful." The willfulness requirement of § 1681n is defined to include both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57 (2007). However, no case in the nation provides bright line rules as to what constitutes "willful"

conduct in a FACTA case, despite the fact that these issues are regularly litigated. Therefore, Class Counsel was required to regularly perform nationwide research to monitor Court rulings on the "willfulness" issue.

Additionally, pursuant to 15 U.S.C. § 1681n(a)(1)(A), a jury can award statutory damages ranging from $100 to $1,000 per consumer, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2). In this case, that means that a verdict could range from approximately $7,700,000 to $77,000,000. However, a verdict of that amount could raise issues regarding constitutional due process violations. In fact, though Courts have repeatedly rejected attacks on the constitutionality of FACTA based upon the possibility of excessive damages, the statue continues to be attacked on this basis. *See*, *e.g.*, *Armes v. Sogro, Inc.*, 2011 WL 1197537, *7-8 (E.D. Wis. Mar. 29, 2011) (discussing history of constitutional attacks on FACTA).

Additionally, large potential verdicts in FACTA cases have raised class certification issues as well, as some Courts initially determined that FACTA cases do not meet the superiority requirement of Fed. R. Civ. P. 23 because class-wide damages would be too great. *See*, *e.g.*, *Bateman v. Am. Multi-Cinema, Inc.*, 252 F.R.D. 647 (C.D. Cal. 2008) rev'd and remanded, 623 F.3d 708 (9th Cir. 2010); *Stillmock v. Weis Markets, Inc.*, 2009 WL 595642 (D. Md. Mar. 5, 2009) *vacated,* 385 F. App'x. 267 (4th Cir. 2010). Although these decisions were reversed, many of these cases were winding through the appeal process during the pendency of this case.

In addition, Class Counsel has had to conduct continuous legal research regarding insurance coverage issues in order to determine whether Defendant's insurance policy provided coverage for the claims.[1] Insurance coverage would negate potential problems with the

---

[1] Defendant's insurer provided the defense under a reservation of rights.

superiority requirement of Fed. R. Civ. P. 23, as the damages would not be destructive to Defendant's business. However, despite the fact that these insurance issues are prevalent in FACTA litigation, the cases conflict as to whether FACTA violations constitute "advertising injuries" under commercial general liability policies. *Compare Whole Enchilada, Inc. v. Travelers Prop. Cas. Co.*, 581 F.Supp.2d 677 (W.D. Pa. 2008) (holding that there is no insurance coverage); *Creative Hospitality Ventures, Inc. v. U.S. Liability Ins. Co.*, 655 F.Supp.2d 1316 (S.D. Fla. 2009) (holding that there is insurance coverage), *reversed* 444 Fed.Appx. 370 (11th Cir. 2011) (holding that there is no insurance coverage). Indeed, cases addressing these issues are working their way through the courts of appeal now, and Class Counsel has been not only monitoring them, but continually performing nationwide legal research in order to determine the trends in this area of law.

    The insurance coverage issues were especially important in this case. Class Counsel engaged in numerous written communications directly with Harleysville's counsel relating to insurance coverage issues in connection with settlement negotiations over the course of many months. In those written communications, Class Counsel set forth extensive legal analysis as to why they believed the insurance policies issued by Harleysville provided coverage for these claims, and responded to Harleysville's counsel's arguments to the contrary.

    Accordingly, throughout this case, Class Counsel was required to conduct extensive nationwide legal research both on Plaintiff's individual claims as well as on class certification and insurance coverage issues. Thereafter, Class Counsel had to conduct additional research on the law regarding willfulness under FACTA in order to survive summary judgment, as well as the insurance coverage research.

### C. Settlement.

Class Counsel has conducted lengthy and repeated discussions and arms-length negotiations with both Defendant's counsel and Harleysville's counsel with respect to a compromise and settlement of the Lawsuit, with the goal of settling the issues in dispute and achieving the best relief possible for the Class and entered into the Settlement Agreement.

As detailed above, this settlement was reached after significant settlement negotiations, beginning with a settlement conference before Judge Leinenweber in February of 2010. (Docket No. 61). Class Counsel then initiated settlement discussions with Defendant's counsel in April of 2011. Those intensive discussions lasted over eight (8) months—during which time litigation continued uninterrupted—and eventually included the participation of Harleysville's counsel, culminating in the Settlement Agreement before the Court.

Class Counsel's work has also included drafting the Motion for Preliminary Approval of Class Action Settlement. In addition, Class Counsel expended time and effort in preparing the final approval papers, and appearing in Court to obtain preliminary and final approval of the settlement. Class Counsel will further expend additional time bringing this matter to conclusion.

### IV. ARGUMENT.

Upon approval of the Settlement Agreement, Class Counsel will have succeeded in generating a significant monetary and non-monetary benefit of the Class, and there can be no question that they are entitled to reasonable compensation for the result they achieved and the significant risks they assumed. Not only is the agreed-upon Attorneys' Fee Award of $270,000

reasonable in light of the relief provided to the Settlement Class, it is far below Class Counsel's lodestar figure of $635,925.00 in this case—representing only 43% of this lodestar value to date.

## A. Standards for Awarding Attorneys' Fees in These Types of Cases.

It is well-settled that attorneys who achieve a benefit for class members are entitled to be compensated for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Brundidge v. Glendale Federal* Bank, 168 Ill.2d 235, 238 (1995). The key consideration is the *total benefit* achieved on behalf of the class, rather than the amount actually paid out. *See Boeing,* 444 U.S. at 481-482.

Since there was no "common fund" created as part of this settlement, courts generally employ the "lodestar" approach, which entails multiplying the number of hours that the attorneys expended by the attorney's normal hourly rates to create a "lodestar" figure. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Most often this "lodestar" figure is adjusted upwards by the court to compensate counsel for the contingent nature of the case, the quality of work performed, delay in payment and other factors. *Brundidge,* 168 Ill. 2d at 240-42.

The lodestar method is commonly applied in statutory fee-shifting cases, and it is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation. *In re Prudential Ins. Co. Am. Sales Practice Lit.*, 148 F.3d 283, 333 (3rd Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).

The lodestar method is appropriate in this case, as no Class Member sustained actual damages as a result of the Defendant's claimed misconduct; thus, each Class Member could only obtain a maximum recovery of $100 pursuant to 15 U.S.C. § 1681n(a)(1)(A). Also, there is a

fee-shifting provision in the statute, so that the Defendant is obligated to pay Class Counsel's attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

### B. Class Counsel's Fee Petition is Reasonable and Appropriate Under the Lodestar Method of Calculating Fees.

The Court should apply a lodestar approach to determine the fairness of the Attorneys' Fee Award in this case. The lodestar is determined initially by multiplying the number of hours counsel reasonably expended on the litigation times a reasonable hourly rate. An attorney's hourly rate should be based on the market rate that lawyers of similar ability and experience in the community charge for the types of services rendered. *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996).

As of July 6, 2012, Class Counsel had reasonably expended 1,359.50 hours on the case and will devote additional hours to the completion of this case. If the services of Class Counsel had been billed at the hourly rate, Class Counsel would be entitled to payment of at least $635,925.00 for its services. Class Counsel has provided the Court with detailed time records and a supporting affidavit, which are attached hereto. (See, Affidavit of Thomas A. Zimmerman, Jr. ("Zimmerman Aff."), attached hereto as Exhibit A).

The hourly rates utilized by Zimmerman Law Offices, P.C. are comparable to rates charged by attorneys with similar experience, skill and reputation, for similar services in the Chicago legal market and comparable markets nationwide. (Zimmerman Aff., ¶¶ 8-15). The hourly rates charged are actual billing rates for the respective attorneys that they charge to hourly clients, and, therefore, yield a presumption of appropriateness. *See Denius,* 330 F.3d at 930.

Further, several state and federal courts have approved Zimmerman's hourly rates as reasonable. (Zimmerman Aff., ¶¶ 16-18).

Before considering the expenses Class Counsel incurred prosecuting this matter due to the novelty of the issues and success obtained, it is apparent that a multiplier to the base lodestar would be warranted in this case, although none is needed here. Class Counsel's willingness to undertake this litigation was risky, and despite such risk, an excellent result was achieved for the Settlement Class. Plaintiff's claims were largely untested, and Class Counsel agreed to commence this litigation knowing that they would assuredly face significant opposition. (Zimmerman Aff., ¶ 4). Indeed, throughout the litigation Defendant's counsel mounted a vigorous opposition, as detailed above.

The rates employed by Class Counsel are their normal billing rates, and they would not have brought this action absent the prospect of obtaining a percentage of the fund or a multiplier on their actual fees expended to account for the risk inherent in this type of class action. (Zimmerman Aff., ¶¶ 5, 8). Analysis of novel issues, significant investigation, discovery, and careful and extended negotiation of the final Settlement Agreement were required to ensure a substantial benefit to the Settlement Class, and that is in fact what the Settlement Class received. (Zimmerman Aff., ¶ 6).

Accordingly, the agreed-upon payment of $270,000 in attorneys' fees is far less than Class Counsel's base lodestar of $635,925.00, and is reasonable given the result obtained. There is, therefore, no reasonable basis to deny Class Counsel's award of fees as requested herein.

## C. Class Counsel Faced Considerable Contingent Risk In Pursuing This Action.

The small individual stakes involved in these FACTA actions render it economically impractical for anyone to pay attorneys on a current, hourly basis to pursue the claims. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis."). From the outset, this action has been prosecuted by Class Counsel on an all "at-risk" contingent fee basis. Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). Class Counsel faced a significant possibility that they would not be successful on the merits or on class certification and, hence, would not be compensated.

A class action was the only realistic avenue available to vindicate the rights of Settlement Class members as against the Defendant, as the value of each individual claim would only be worth $100-$1,000. Given the complex legal basis of this action and the appellate procedures at Defendant's disposal, "victory—even at the trial stage—is not a guarantee of ultimate success." *In re Michael Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).

Thus, Class Counsel risked a tremendous amount of their time and money with the knowledge that it would be <u>lost</u> if the litigation proved unsuccessful.[2]

---

[2] <u>Unlike</u> Defendant's counsel, who were paid on a non-contingent basis, Class Counsel has thus far received no compensation for their considerable efforts on behalf of the Class. Yet, <u>like</u> Defendant's counsel, Class Counsel had to meet a payroll and pay their rent and other bills on a current basis. It can be accurately observed that while defense counsel are generally paid *per diem*, contingent plaintiff's counsel are paid "perhaps."

In *In re Washington Public Power Supply System Lit.,* the Ninth Circuit emphasized that:

> Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. [Citations omitted.] As the court observed in *Behrens v. Wometco Enter., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "[i]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

19 F.3d 1291, 1299-1300 (9th Cir. 1994).

### D. Class Counsel's Services, Which Resulted in an Excellent Settlement, Were of High Quality.

Class Counsel respectfully submits that they rendered effective representation to the Class in this Lawsuit. Class Counsel was confronted with a significant number of difficult legal and tactical issues throughout the course of this case. The fact that Class Counsel, confronted with these obstacles, was able to secure such settlement relief for the benefit of the Class demonstrates the high quality of their performance. *See In re Equity Funding Corporation of America Sec. Lit.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (the quality of the work "necessarily includes the difficulty of the task performed").

Class Counsel's standing and experience are similarly relevant in considering the application for counsel fees. *See In re Warner Communications Sec. Lit.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Class Counsel has considerable experience in complex class action litigation in federal and state courts throughout the country. Class Counsel's experience is detailed more fully in the Affidavit of Thomas A. Zimmerman, Jr., (Exhibit A). In the end, the quality of Class Counsel's work is best reflected by the favorable settlement obtained for the benefit of the Class. *See In re Warner Communications Sec. Lit.*,

618 F. Supp. 735, 748 (S.D.N.Y. 1985). The settlement relief created by the Settlement Agreement for the benefit of the Class is an excellent result in both absolute terms and when balanced against the multitude of risks facing the Plaintiff and Class Counsel.

### E. The Reaction of Class Members Favors The Requested Award.

Courts have recognized that "[t]he lack of objection from members of the class is one of the most important factors" in awarding attorneys' fees. *See In re General Public Utilities Sec. Lit.*, No.79-1420, 1983 WL 22362, *8 (D.N.J. Nov. 16, 1983); *In re Art Materials Antitrust Lit.*, MDL No. 436, 1983 WL 1947, *5 (N.D. Ohio Dec. 27, 1983). In this case, the Class Notice advised that under the Settlement Agreement Class Counsel was authorized to apply for an award of attorneys' fees and costs in the amount of $270,000. Despite the size of the Class—over 77,000 people—Class Counsel received **no objections** to the terms of the Settlement and **no Class Members opted-out of the settlement.**

### F. The Incentive Award to the Class Representatives is Reasonable and Should be Approved.

Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722-723 (7th Cir. 2001). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

These factors are readily satisfied, in the instant action, because the Settlement Class benefitted significantly from the Plaintiff's involvement as the Class Representative. The substantial benefit that the Class received under this Settlement Agreement would not have resulted were it not for her efforts and contributions to the litigation by assisting Class Counsel with their investigation and filing of the underlying suit, her participation in responding to Defendant's repeated written discovery requests, and sitting for two (2) depositions. (Zimmerman Aff., ¶ 24).

## V. CONCLUSION.

Accordingly, for the foregoing reasons, Class Counsel respectfully requests that the Court award Class Counsel attorneys' fees and costs in the agreed-upon amount of $270,000, approve the incentive award of $10,000 to Plaintiff, and for any other relief the Court deems just under the circumstances.

Respectfully submitted,

   s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (#6231944)
Adam M. Tamburelli (#6292017)
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street
Suite 1220
Chicago, Illinois 60602
(312) 440-0020

Counsel for the Plaintiff and Class

## **PROOF OF SERVICE**

      Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he filed the foregoing document upon all counsel of record, via the U.S. District Court's CM/ECF System, prior to 4:30 p.m. on July 6, 2012.

                                                          s/ Thomas A. Zimmerman, Jr.